CLAUDIA M. VETESI (CA SBN 233485)
CVetesi@mofo.com
ELIZABETH BALASSONE (CA SBN 280563)
EBalassone@mofo.com
CLAIRE BONELLI (CA SBN 317735)
CBonelli@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:   415.268.7000
Facsimile:    415.268.7522

Attorneys for Defendants
UNILEVER UNITED STATES, INC.,
UPFIELD US INC. AND
UPFIELD SOURCING US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JENNIFER ZIZUMBO, CHANDRA ZUNDEL, and ADRIANNE ORDAZ, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>UNILEVER UNITED STATES, INC., UPFIELD US INC. (formerly known as UNILEVER BSC US INC.) AND UPFIELD SOURCING US, INC. (formerly known as UNILEVER BSC SOURCING US, INC.), Delaware corporations,<br><br>          Defendants. | Case No. 4:18-cv-07213-JSW<br>Related to: 4:13-cv-01675-JSW<br><br>**NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Hearing Date:   May 3, 2019<br>Time:              9:00 a.m.<br>Judge:            Hon. Jeffrey S. White<br>Action Filed:    October 19, 2018 |

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Defendants' MTD First Amended Complaint and MTS Class Allegations
Case No. 4:18-cv-07213-JSW
sf-3991843

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

NOTICE OF MOTION AND MOTION ............................................................................... viii

STATEMENT OF THE ISSUES TO BE DECIDED ............................................................. ix

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.    FACTUAL BACKGROUND ......................................................................................... 3

    A.     This Is Plaintiffs' Counsel's Third Lawsuit Challenging the Labeling of ICINBS. ................................................................................................................ 3

    B.     The Gravamen of Plaintiffs' Claims. ........................................................... 4

III.   LEGAL STANDARDS .................................................................................................. 5

IV.    ARGUMENT .................................................................................................................. 5

    A.     Unilever Is an Improper Defendant. ............................................................ 5

        1.     Plaintiffs Lack Standing to Sue Unilever Under 12(b)(1). ................ 6

        2.     Plaintiffs Fail to Plead Plausible Claims Under 12(b)(6). ................ 8

    B.     All of Plaintiffs' Claims Are Expressly Preempted Because They Impose Requirements "Not Identical" to FDA Regulations. ..................................... 9

        1.     Plaintiffs' "Serving Size" Claims Are Expressly Preempted. ......... 11

        2.     Plaintiffs' Calorie and Fat "Nutrient Content" Claims Are Expressly Preempted. ......................................................................... 15

        3.     Plaintiffs' "Statement of Identity" Claim Is Expressly Preempted. .......... 15

        4.     Plaintiffs' "Asterisk" Claim Is Expressly Preempted. ..................... 16

    C.     Plaintiffs Fail to Allege Plausible Claims of Reliance and Deception. ............. 17

        1.     Plaintiffs' Proposed 40 Spray Serving Size Is Implausible. ........... 18

        2.     Plaintiffs' Reliance on Serving Size Statements to Extrapolate Calories and Fat in ICBINBS Product Is Implausible. ............................. 19

    D.     Plaintiffs' Omission Claims Are Not Plausible and Do Not Give Rise to a Duty to Disclose. ....................................................................................... 20

    E.     Plaintiffs' Claims Sounding in Fraud Are Not Pled with the Requisite Particularity. ................................................................................................ 21

    F.     Plaintiffs Lack Standing to Rely on ICBINBS Website Statements. ............... 22

        1.     Plaintiffs Lack Standing to Seek Injunctive Relief. ........................ 23

    G.     Plaintiffs' Class Definition Is Geographically Overbroad. ......................... 24

V.     CONCLUSION ............................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................5

*Audio Emotion S/A v. McIntosh Grp., Inc.*,
  707 F. App'x 729 (2d Cir. 2017) ...............................................................................................8

*Babadjanian v. Deutsche Bank Nat'l Tr. Co.*,
  No. CV10-02580 MMM, 2010 WL 11549885 (C.D. Cal. July 19, 2010).................................8

*Barboza v. Cal. Ass'n of Prof'l Firefighters*,
  651 F.3d 1073 (9th Cir. 2011).................................................................................................14

*Barnes v. Campbell Soup Co.*,
  No. 3:12-cv-05185-JSW, 2013 WL 5530017 (N.D. Cal. July 25, 2013) .................................17

*Bauer v. Goss*,
  No. 12-cv-876-JSW, 2012 WL 2838834 (N.D. Cal. July 20, 2012).........................................16

*Berryman v. Merit Prop. Mgmt., Inc.*,
  152 Cal. App. 4th 1544 (2007) ...............................................................................................17

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) ...................................................................................................2, 24, 25

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996)......................................................................................................5

*Cardona v. Target Corp.*,
  No. CV 12-1148-GHK, 2013 WL 1181963 (C.D. Cal. Mar. 20, 2013) ...................................16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ............................................................................................................17

*Chase v. Hobby Lobby*,
  No. 17-CV-00881-GPC-BLM, 2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) ..........................22

*Clark v. Group Hospitalization & Med. Servs., Inc.*,
  No. 10-CV-333-BEN (BLM), 2010 WL 5093629 (S.D. Cal. Dec. 7, 2010)...........................25

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008)..................................................................................................17

*Corazon v. Aurora Loan Servs., LLC*,
  No. 11-00542-SC, 2011 WL 170099 (N.D. Cal. May 5, 2011).................................................9

*Cummings v. Harris*,
   No. 14- cv-02539-BLF, 2015 WL 4552446 (N.D. Cal. July 28, 2015) ......................................9

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...................................................................................................................25

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ....................................................................................................20

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ......................................................................................................23

*DeBernardis v. NBTY, Inc.*,
   No. 17 C 6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018) .......................................................25

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ......................................................................................................17

*Fernandez v. Atkins Nutritionals, Inc.*,
   No. 3:17-cv-1628-GPC-WVG, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ...........................24

*Fleck and Assocs., Inc. v. City of Phoenix*,
   471 F.3d 1100 (9th Cir. 2006) ......................................................................................................6

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ........................................................................................................20

*Gauvinv v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) .............................................................................................9

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................................................5

*Hairston v. S. Beach Bev. Co., Inc.*,
   No. CV 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ......................................20

*Hodson v. Mars Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) ....................................................................................21

*Hodson v. Mars Inc.*,
   891 F.3d 857 (9th Cir. 2018) ......................................................................................................21

*In re Arris Cable Modem Consumer Litig.*,
   No. 17-CV-1834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .............................................5

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   No. 09MD2087-BTM (AJB), 2010 WL 1838080 (S.D. Cal. May 5, 2010) ............................22

*In re Sagent Tech., Inc.*,
   278 F. Supp .2d 1079 (N.D. Cal. 2003) .......................................................................................9

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
No. 16-CV-06391-BLF, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ................................25

*Johns v. Bayer Corp.*,
No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ............................22

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..................................................................................................5

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................................................................................................8

*Krantz v. BT Visual Images, L.L.C.*,
89 Cal. App. 4th 164 (2001) ...................................................................................................17

*Lanovaz v. Twinings N. Am., Inc.*,
726 F. App'x 590 (9th Cir. 2018) .....................................................................................23, 24

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) .................................................................................................18

*Lefkowtiz v. Scytl USA*,
No. 15-CV-05005-JSC, 2016 WL 537952 (N.D. Cal. Feb. 11, 2016)......................................8

*Leonhart v. Nature's Path Foods, Inc.*,
No. 13-cv-00492-BLF, 2014 WL 6657809 (N.D. Cal. Nov. 21, 2014)...................................22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130 (1992) .......................................................................................6

*M.S. v. Brown*,
902 F.3d 1076 (9th Cir. 2018)...............................................................................................6, 8

*Markman v. Leoni*,
No. CV 09-8364 SVW, 2010 WL 8275829 (CD. Cal. Nov. 3, 2010) ......................................9

*Maxwell v. Unilever United States, Inc.*,
No. 5:12-cv-1736-EJD, 2018 WL 1536761 (N.D. Cal. Mar. 29, 2018) ...........................19, 20

*McCarthy v. United States*,
850 F.2d 558 (9th Cir.1988)......................................................................................................6

*McDonnell v. Nature's Way Prod., LLC*,
No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) .................................................25

*Moses v. Innoprise Software*,
No. C-12-05271 EDL, 2014 WL 691587 (N.D. Cal. Feb. 21, 2014) ........................................8

*Palmer v. Apple*,
No. 5:15-cv-5808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ...............................24

*Pardini v. Unilever*,
  961 F. Supp. 2d 1048 (N.D. Cal. 2013) (*Pardini I*) .......................................................... *passim*

*Pardini v. Unilever United States, Inc.*,
  No. 4:13-cv-01675-JSW, 2014 WL 265663 (N.D. Cal. Jan. 22, 2014)
  (*Pardini II*) .......................................................................................................................... *passim*

*Pemberton v. Nationstar Mortg. LLC*,
  331 F. Supp. 3d 1018 (S.D. Cal. 2018) ....................................................................................17

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003).................................................................................................23

*Rosen v. Unilever U.S., Inc.*,
  No. C 09-cv-02563 JW, 2010 WL 4807100 (N.D. Cal. May 3, 2010)....................................19

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004)...................................................................................................6

*Sanders v. Consol. Tribal Health Project, Inc.*,
  No. C-95-4655 FMS, 1996 WL 79731 (N.D. Cal. Feb. 8, 1996) ..............................................8

*Sena v. United States*,
  No. Cv 07-1722 PSGJWJX, 2007 WL 2846880 (C.D. Cal. June 29, 2007) ............................6

*Shartsis Friese LLP v. JP Morgan Ret. Servs., LLC*,
  No. 08-1064 SC, 2008 WL 3287033 (N.D. Cal. Aug.1, 2008) .................................................5

*St. Clair v. City of Chico*,
  880 F.2d 199 (9th Cir.1989).......................................................................................................6

*Sud v. Costo Wholesale Corp.*,
  229 F. Supp. 3d 1075 (N.D. Cal. 2017) (White, J.) ...........................................................20, 23

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
  307 F.3d 775 (9th Cir. 2002)....................................................................................................17

*Tietsworth v. Sears, Roebuck & Co.*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) .....................................................................................5

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)...............................................................................................5, 21

*Victor v. R.C. Bigelow, Inc.*,
  708 F. App'x 333 (9th Cir. 2017) .............................................................................................24

*Vieste, LLC v. Hill Redwood Development*,
  No. C 09–04024 JSW, 2010 WL 4392939 (N.D. Cal. Oct. 29, 2010)................................19, 21

*Walberg v. U.S. Postal Serv.*,
  No. 2:14-CV-0988-TLN-CMK, 2016 WL 815651 (E.D. Cal. Mar. 2, 2016) ...........................8

*Walker v. ConAgra Foods, Inc.*,
  No. 15-cv-02424-JSW, 2016 WL 9087336 (N.D. Cal. Mar. 23, 2016)...................................10

*Werbel ex rel. v. Pepsico, Inc.*,
  No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) .......................................18

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934, 938 (9th Cir. 2008)........................................................................................17

*Wilson v. Hewlett–Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012)...............................................................................................21

*Zucco Partners LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009).................................................................................................5

**Statutes**

21 U.S.C.
  § 341 *et seq.* ...........................................................................................................................9
  § 343(q)(1)(A)-(D)...................................................................................................................9

Cal. Civ. Code
  § 1780(d) ................................................................................................................................4

**Other Authorities**

21 C.F.R.
  § 101.3(b)(1)-(3) ....................................................................................................................15
  § 101.3(b)(3) ..........................................................................................................................15
  § 101.9(b)(2) .......................................................................................................................9, 12
  § 101.9(b)(2)(iii) ...................................................................................................................14
  § 101.9(b)(11) ........................................................................................................................18
  § 101.9(c)(1)-(c)(2) ................................................................................................................15
  § 101.12(a)(1)......................................................................................................................9, 12
  § 101.12(a)((2) ....................................................................................................................9, 12
  § 101.12(a)(8)..............................................................................................................10, 11, 12
  § 101.12(b) ...................................................................................................................10, 12, 13
  § 101.12(b) n.4 ...................................................................................................................10, 11
  § 101.12, Table 2 ...................................................................................................................10
  § 101.13(d) .............................................................................................................................12
  § 102.5(b) ...............................................................................................................................16
  § 102.5(c) ...............................................................................................................................16

Fed. R. Civ. P.

    8(a) ............................................................................................................................9

    8(a)(2).........................................................................................................................9

    9(b) ................................................................................................................5, 21, 22

    12(b)(1) ...................................................................................................................1, 6

    12(b)(6) ................................................................................................................1, 6, 8

    12(f)...........................................................................................................................5

# NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 3, 2019 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, CA 94612, before the Honorable Jeffrey S. White, Defendants Unilever United States, Inc. ("Unilever"), Upfield US Inc. and Upfield Sourcing US, Inc. ("Upfield") (jointly "Defendants") will, and hereby do move, to dismiss the First Amended Class Action Complaint ("FAC") of Plaintiffs Jennifer Zizumbo, Chandra Zundel, and Adrianne Ordaz, pursuant to (i) Fed. R. Civ. P. 12(b)(1) for lack of standing; (ii) Fed. R. Civ. P. 12(b)(6) on the ground that the FAC fails to state a claim upon which relief can be granted, and (iii) Fed. R. Civ. P. 9(b) for failure to plead fraud with specificity.  Also, pursuant to Fed. R. Civ. P. 12(f), Defendants will ask the Court to strike as "immaterial" Plaintiffs' geographically overbroad nationwide class definition.  (FAC ¶ 122.)

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of David Schwartz and the exhibits attached thereto, the Request for Judicial Notice and the declaration and exhibits attached thereto, the pleadings, records, and papers on file in this action, and such other written and oral argument as may be presented to the Court.

Dated:  March 1, 2019

CLAUDIA M. VETESI
ELIZABETH BALASSONE
CLAIRE BONELLI
MORRISON & FOERSTER LLP


By:  */s/ Claudia M. Vetesi*
     Claudia M. Vetesi

Attorneys for Defendants
UNILEVER UNITED STATES, INC.,
UPFIELD US INC. AND UPFIELD
SOURCING US, INC.

## STATEMENT OF THE ISSUES TO BE DECIDED

This Motion raises the following issues:

1.      **Improper Defendant.**  Do Plaintiffs have standing to bring claims against Unilever United States, Inc. when the brand was transferred to different entities, ████████████████████████████████████████████ ██████? Can Plaintiffs state a plausible claim for relief against Unilever United States, Inc. when the brand was transferred to different entities in 2015, and ██████████████████████████████████████████████████████?

2.      **Express Preemption.**  Can Plaintiffs impose product label requirements that are "not identical to" FDA regulations?

3.      **Plausibility.**  Are Plaintiffs' claims plausible?

4.      **Omission Claims.**  Can Plaintiffs assert omissions claims where Defendants have no duty to disclose because the alleged omitted information does not go to the safety of the product?

5.      **Rule 9(b) Particularity.**  Do Plaintiffs plead their claims sounding in fraud with the requisite particularity?

6.      **Standing.**  Do Plaintiffs have standing to sue over statements they never read or relied on prior to purchase?  Do Plaintiffs have standing to seek injunctive relief when they have not alleged with concreteness that they will purchase the product again?

7.      **Rule 12(f) Motion to Strike.**  Should Plaintiffs' geographically overbroad nationwide class definition be stricken as "immaterial"?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This is Plaintiffs' counsel's *third* attempt to challenge the labeling for "I Can't Believe It's Not Butter! Spray®" ("ICBINBS" or "ICBINB Spray").  Plaintiffs contend that the 0 calories and 0g fat *per serving* statement on the label is false and misleading because ICBINBS selected the wrong serving size from FDA's "Fats and Oils" food category.  ICBINB Spray is not actually a *spray*, they argue.  Instead, the product is like a traditional butter stick or tub of margarine, which is subject to a larger serving size (1 tablespoon, versus 0.25 g for a spray).  This Court, however, has twice rejected these same arguments in the related *Pardini* matter, filed in 2013.  It found that ICBINBS's serving sizes were consistent with FDA regulations governing "Spray types."  The Court also rejected Plaintiffs' arguments that ICBINBS is not a spray—not only does the product come in a bottle with a manual spray pump, but Plaintiffs' claims that consumers use the product as a "butter" substitute by unscrewing the cap and pouring the contents onto their food was implausible.

Unhappy with the rulings in *Pardini*, Plaintiffs' counsel opted to file again—this time in another forum with different named Plaintiffs and a few updates to their recycled claims.  The Court should dismiss this third attempt to resurrect these claims.

First, even after Plaintiffs amended their complaint to add Upfield, Plaintiffs continue to pursue claims against improper defendant Unilever.  ICBINBS—along with the entire ICBINB brand—was transferred to different entities in 2015.  Unilever does not own ICBINBS, ███████ ██████████████████████████████.  Plaintiffs lack standing to sue Unilever under Rule 12(b)(1) and cannot state a plausible claim for relief under Rule 12(b)(6).

Second, Plaintiffs' claims are expressly preempted because they seek to impose labeling requirements that are "not identical" to what FDA has mandated.  ICBINBS is a spray, and because ICBINBS contains 0.08 grams of fat and 0.8 calories under FDA's serving size for sprays, those amounts are *required* to be rounded down to zero.  Plaintiffs further challenge the label as false and misleading because it fails to state that the product is "40% vegetable oil" or contains "vegetable oil."  But such a statement is only required where there is a "common or

usual name" for a product (such as "peanut butter" or "cheese"), which is not the case here. ICBINBS instead has properly included an "appropriately descriptive term" on its labels, including "buttery spray." Finally, to the extent Plaintiffs challenge the asterisk in the nutrition facts panel next to the ingredient "soybean oil" as well as the language below the ingredient list indicating that soybean oil "ADDS A DIETARILY INSIGNIFICANT AMOUNT OF FAT," that claim is preempted by FDA regulations governing "fat content claims."

Third, even if not preempted by FDA regulations, Plaintiffs' claims are implausible. As this Court previously found, Plaintiffs cannot plausibly allege that ICBINB Spray is not actually a spray—it operates like a spray and is labeled a "cooking spray." Further, any assertion that consumers believed ICBINBS contained zero fat and calories in the *entire* bottle is implausible. Indeed, each named Plaintiff has alleged that they read the ingredient list. The first four ingredients listed there are "WATER, SOYBEAN OIL, SALT, SWEET CREAM BUTTERMILK." Reasonable consumers know that soybean oil and buttermilk contain fat.

Fourth, Plaintiffs' omissions claims fail because there are no allegations that the omitted information (the "true" amount of fat and calories) goes to the safety of the product.

Fifth, Plaintiffs' claims sounding in fraud are not pled with the requisite particularity. Plaintiffs fail to specifically allege what they purchased, how they relied on Defendants' purported misrepresentations and omissions, or how they were injured.

Sixth, Plaintiffs lack standing to challenge statements that they did not see or rely on prior to purchase, and to request injunctive relief where they fail to allege any concrete plans to purchase the product again in the future.

Seventh, Plaintiffs' nationwide class averments should be stricken under *Bristol-Myers Squibb Co. v. Superior Court* ("*BMS*"), 137 S. Ct. 1773 (2017). As California residents with claims against an out-of-state corporation, Plaintiffs may not represent out-of-state class members whose claims have no "affiliation" with the forum state.

For these reasons, Defendants respectfully request that the Court grant their Motion.

## II.   FACTUAL BACKGROUND

### A.   This Is Plaintiffs' Counsel's Third Lawsuit Challenging the Labeling of ICINBS.

This case is the product of forum-shopping.  This is counsel's *third* lawsuit challenging ICBINBS's labeling as false and misleading based on its 0g fat and 0 calories per serving statements.  Plaintiffs' counsel first started out in the Western District of Missouri in a case brought by Carrie Wood called *Wood v. Unilever United States, Inc.*, No. 4:12-cv-01066-DGK (W.D. Mo. filed Aug. 15, 2012).  Unilever filed a motion to dismiss, which was fully briefed and awaiting a ruling.  On February 20, 2013, Unilever took Ms. Wood's deposition.  About six weeks later, on April 9, 2013, Plaintiff dismissed her case.  Three days after that dismissal, Plaintiffs' counsel filed *Pardini v. Unilever United States, Inc.*, No. 4:13-cv-01675-JSW, on behalf of a new plaintiff.  *Pardini* asserted the same claims from *Wood*, and added new claims based on California consumer protection statutes.

On July 9, 2013, the Court granted Unilever's motion to dismiss *Pardini*.  It found that Ms. Pardini's claims based on allegedly illegal serving sizes and false nutrient content claims were expressly preempted by FDA regulations.  *Pardini v. Unilever*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013) (*Pardini I*).  Plaintiffs' 'asterisk' claim—that the front label in use from December 2009 to May 2010 with a "Contains 0g fat" statement did not have asterisks after certain ingredients on the back label denoting they contain fat—survived.  *Id.* at 1060.  Plaintiffs Pardini and Wood then jointly filed a First Amended Complaint on August 8, 2013, and a Second Amended Complaint on September 20, 2013.  Unilever filed another motion to dismiss.

In its Order on Unilever's motion to dismiss, the Court again found that Plaintiffs' serving size and nutrient content claims were preempted on the same basis as *Pardini I* and were dismissed with prejudice.  *Pardini v. Unilever United States, Inc.*, No. 4:13-cv-01675-JSW, 2014 WL 265663 (N.D. Cal. Jan. 22, 2014) (*Pardini II*).  The Court made clear that only Plaintiffs' 'asterisk' claim survived.  (*Id.* at *10 ("Plaintiffs' claims are not preempted to the extent that they are predicated on Defendant's failure to provide a notation on the nutrition panel that certain ingredients contain fat (the 'asterisk claim').")

In an apparent effort to forum shop for a better ruling, Plaintiffs filed this case in Alameda state court (No. RG-18925345 (Alameda County Super. Ct.)).  Unilever successfully sought removal to this Court, relation to *Pardini*, and assignment to the Honorable Jeffrey S. White. (*See* ECF Nos. 11-12.)

On December 17, 2018, Unilever filed a motion to dismiss Plaintiffs' complaint.  (ECF No. 16.)  While the motion was pending, Unilever agreed to Plaintiffs' request to stipulate to the filing of an amended complaint.  (ECF No. 21.)  Plaintiffs filed their FAC on January 11, 2019, which asserts the same claims as the original complaint and does not dismiss Unilever, but adds defendants Upfield US Inc. and Upfield Sourcing US, Inc.  (ECF No. 22.)

**B.      The Gravamen of Plaintiffs' Claims.**

As with the prior iterations of the *Wood* and *Pardini* complaints, the FAC alleges that the "0 calories" and "0g fat" per serving statements on the ICBINBS label are false and misleading because (1) ICBINBS is not a "spray," but a "substitute butter" product; (2) because it is a "substitute butter" product, the serving size under FDA regulations must be 1 tablespoon, which Plaintiffs allege is equivalent to 40 sprays; (3) because ICBINBS used the wrong serving size (0.25 g under the category of "Spray type"), consumers were deceived into thinking the entire product contained 0 fat and 0 calories; and (4) the ICBINBS front label should disclose that the product is 40% vegetable oil.  (FAC ¶¶ 18, 47, 72.)

Plaintiffs assert six causes of action for: (1) fraud, deceit, and/or misrepresentation; (2) violation of the CLRA;[1] (3) violation of the FAL; (4) negligent misrepresentation; (5) violation of the UCL (unlawful, unfair, and deceptive practices); and (6) unjust enrichment. Plaintiffs seek an injunction, restitution, damages, and other relief.  (*Id*. at p. 45-46.)  Plaintiffs seek to represent a class of "[a]ll persons who, between October 15, 2014 and the present,

---

[1] In any action under the CLRA, plaintiffs are required to "file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action."  Cal. Civ. Code § 1780(d).  "If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice."  (*Id.*)  Plaintiffs have failed to file this affidavit and accordingly, their action should be dismissed.

purchased, in the United States, any size bottle ICBINB Spray," and a California subclass of "[a]ll members of the Class who made a ICBINB Spray purchase in California." (*Id*. ¶ 122.)

## III.   LEGAL STANDARDS

A court must accept all factual allegations pled in the complaint as true, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), but need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("[B]are assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" are not entitled to an assumption of truth. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Because Plaintiffs' claims sound in fraud (*e.g.* FAC ¶ 1), the entire complaint must be pled with particularity under Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003); *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126-27 (9th Cir. 2009) (affirmative misrepresentations or omissions); *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-1834-LHK, 2018 WL 288085, at *9 (N.D. Cal. Jan. 4, 2018) (UCL, FAL, and CLRA); *Shartsis Friese LLP v. JP Morgan Ret. Servs., LLC*, No. 08-1064 SC, 2008 WL 3287033, at *2 (N.D. Cal. Aug.1, 2008) (negligent misrepresentation).

The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint (when the authenticity of such documents is not questioned), and other matters of which the Court can take judicial notice. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).

A party may move the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court has the "authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

## IV.   ARGUMENT

### A.   Unilever Is an Improper Defendant.

Despite adding Upfield to the FAC, Plaintiffs continue to assert claims against Unilever. But Unilever is still an improper defendant because it transferred the assets of the ICBINB brand

to different entities in 2015, and those entities were sold to Upfield in 2018.  Upfield owns ICBINBS and ███████████████████████████████████████ ████████████████████████████████.  Plaintiffs have no standing to sue Unilever under 12(b)(1) and cannot state a claim for plausible relief against them under 12(b)(6).

### 1. Plaintiffs Lack Standing to Sue Unilever Under 12(b)(1).

Because Unilever is not a proper defendant here, the Court should dismiss Plaintiffs' claims against Unilever due to lack of Article III standing pursuant to Fed. R. Civ. P. 12(b)(1).  To establish the threshold requirement of Article III standing, a plaintiff must allege an injury-in-fact, causation, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136-37 (1992); *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).  If the plaintiff cannot meet its burden to establish standing, the court must dismiss the plaintiff's claims for lack of subject matter jurisdiction.  *Fleck and Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006).[2]  Plaintiffs cannot meet these requirements.

<u>First</u>, Plaintiffs cannot show that Unilever was the "cause" of their alleged injuries.  Plaintiffs concede that Unilever no longer owns or controls the ICBINB brand, but they nevertheless continue to pursue claims against Unilever.  (*See* FAC ¶10.)  But Unilever transferred the brand over three years ago, and with it any control over and responsibility for the brand.  (Schwartz Decl. ¶¶ 3, 6.)  Accordingly, Unilever is ██████████████████████ ████████████████.  (*See id.* ¶¶ 3-10, Exs. A-E.)[3]  In April 2015, two entities—Unilever BCS

---

[2] Because a challenge to standing is a jurisdictional attack under 12(b)(1), the court need not presume the truthfulness of the plaintiff's allegations at the pleading stage, and the plaintiff will have the burden of proof that jurisdiction does in fact exist.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989) ("It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.").

[3] In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Meyer*, 373 F.3d at 1039 (9th Cir.2004); *see also McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").  This includes declarations submitted in support of a motion to dismiss under 12(b)(1).  *Sena v. United States*, No. Cv 07-1722 PSGJWJX, 2007 WL 2846880, at *2 (C.D. Cal. June 29, 2007).

US Inc. and Unilever BCS Sourcing US, Inc.—were created.  (*Id.* ¶ 4, Exs. A-B.) ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████.  (*Id.* ¶ 3, Ex. C at p. 1, para. (C).) ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████.  (*Id.*, Ex. C at p. 3, para. (N).) ████████████████████

████████████████████████.  (*Id.* at p. 3, para. (O).)  On July 2, 2018, Unilever sold Unilever BCS US, Inc. and Unilever BCS Sourcing US, Inc.  (*Id.* ¶ 7.)  The entities' names were changed to Upfield US Inc. and Upfield Sourcing US, Inc. (*Id.* ¶ 8-10, Exs. D-E.)

Defendants' counsel advised Plaintiffs' counsel of these facts months ago.  (See ECF No. 16-2 ¶ 2.)  Even after amending their complaint to add the Upfield entities as defendants, Plaintiffs refuse to dismiss Unilever.  Instead, Plaintiffs contend that responsibility for ICBINBS is now "shared" between Unilever and Upfield.  (FAC ¶ 10.)  That is wrong.  And Plaintiffs' other attempts to keep Unilever in the case—alleging that the ICBINBS back label includes the word "Unilever" (*id.* ¶ 22), Unilever *previously* operated the ICBINBS website (*id.* ¶ 18, fn. 2), Upfield was not found in certain databases (*id.* ¶¶ 6-7)[4]—are irrelevant.  Upfield owns ICBINBS and ████████████████████████████████.  (Schwartz Decl. ¶¶ 3-10.)  Indeed, Plaintiffs' allegations are contradicted by the express terms of the Contribution Agreement which include among the assets to be transferred to the BCS Business "████████████████████," "████████████████████████," and "████████████████████████████████████."  (Schwartz Decl., Ex. C at p. 2, para. (K).)  Plaintiffs fail to establish their standing to pursue claims against Unilever.

Second, Plaintiffs cannot show "redressability."  Even if Plaintiffs were to succeed in this action, Unilever could not provide any relief because ████████████████████████████████

---

[4] Even if these allegations were relevant, they have been resolved.  Upfield US Inc. is in the New York Secretary of State database and registered in California.  (RJN Exs. I-K.)

██████████.[5] *See Audio Emotion S/A v. McIntosh Grp., Inc.*, 707 F. App'x 729, 731 (2d Cir. 2017) (a successor company assumes liability for a predecessor's liabilities if the successor expressly or impliedly agrees to assume the subject liabilities).[6]  This Court should dismiss Plaintiffs' claims against Unilever for lack of subject matter jurisdiction.  *See Walberg v. U.S. Postal Serv.*, No. 2:14-CV-0988-TLN-CMK, 2016 WL 815651, at *2 (E.D. Cal. Mar. 2, 2016) (finding plaintiff's failure to name the proper defendant in the complaint divests the court of subject-matter jurisdiction);  *Sanders v. Consol. Tribal Health Project, Inc.*, No. C-95-4655 FMS, 1996 WL 79731, at *1 (N.D. Cal. Feb. 8, 1996) (dismissing claims under 12(b)(1) where plaintiff failed to name the proper party as defendant).

### 2.   Plaintiffs Fail to Plead Plausible Claims Under 12(b)(6).

Even if the Court finds that Plaintiffs have standing to pursue claims against Unilever, Plaintiffs' claims require dismissal under 12(b)(6) for two additional reasons.  First, Plaintiffs cannot plead a plausible claim for relief as to Unilever ████████████████████████

████████████████████████████████████████████████

██. (*See* Schwartz Decl., Ex C.[7]; *Moses v. Innoprise Software*, No. C-12-05271 EDL, 2014 WL 691587, at *3 (N.D. Cal. Feb. 21, 2014) ("Because [successor liability] shifts liability, it is 'not a separate claim' but rather 'requires an underlying cause of action and merely extends the liability

---

[5] For these same reasons, Plaintiffs cannot state a claim for injunctive relief against Unilever United States, Inc.  (*M.S. v. Brown*, 902 F.3d at 1080 (injunctive relief improper where sued entity could not fix alleged unconstitutional practices).)

[6] The Contribution Agreement is governed by the laws of New York (Schwartz Decl., Ex. C at p. 5, §2.5), but the law for successor liability is the same in California.  *See Lefkowtiz v. Scytl USA*, No. 15-CV-05005-JSC, 2016 WL 537952, at *4 (N.D. Cal. Feb. 11, 2016).

[7] On a motion to dismiss under 12(b)(6), the doctrine of incorporation by reference allows the court to consider documents as though they are part of the complaint to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).  Here, the Contribution Agreement is central whether Plaintiffs have stated a plausible claim against Unilever.  This is one of "those rare instances where assessing the sufficiency of a claim requires that the document at issue be reviewed, even at the pleading stage." *Khoja*, 899 F.3d at 1002; *see also Babadjanian v. Deutsche Bank Nat'l Tr. Co.*, No. CV10-02580 MMM (RZx), 2010 WL 11549885, at *3 (C.D. Cal. July 19, 2010) (considering a purchase agreement under the incorporation by reference doctrine).

on that cause of action to a corporation that would not otherwise be liable.'"); *Cummings v. Harris*, No. 14- cv-02539-BLF, 2015 WL 4552446, at *3 (N.D. Cal. July 28, 2015) (dismissing complaint under 12(b)(6) where plaintiff improperly named defendant).)

Second, Plaintiffs' failure to differentiate between Unilever and the Upfield entities renders their allegations as to all defendants too vague to be actionable. *Corazon v. Aurora Loan Servs., LLC*, No. 11-00542-SC, 2011 WL 170099, at *4 (N.D. Cal. May 5, 2011) ("undifferentiated pleading against multiple defendants is improper")  The FAC refers generally to "the Defendants," but fails to distinguish among the entities.  (*See* FAC ¶ 9 [defining "Defendants" as Unilever and both Upfield entities].)  Plaintiffs' failure to show the participation of each defendant is grounds for dismissal under Rule 8(a).  *Gauvinv v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping together of multiple defendants in one broad allegation failed to satisfy the notice requirement of Rule 8(a)(2)); *see also Markman v. Leoni*, No. CV 09-8364 SVW, 2010 WL 8275829, at *9 (CD. Cal. Nov. 3, 2010) ("Plaintiff may not simply lump defendants together but must make specific factual allegations as to each."); *In re Sagent Tech., Inc.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act.").

## B.    All of Plaintiffs' Claims Are Expressly Preempted Because They Impose Requirements "Not Identical" to FDA Regulations.

The Federal Food, Drug, and Cosmetic Act (FDCA) establishes a comprehensive federal scheme of food regulation to ensure food is safe and is labeled in a non-misleading manner.  21 U.S.C. § 341 *et seq.*  The Nutrition Labeling and Education Act (NLEA) amended the FDCA in 1990 to require uniform food labeling and require the now-familiar "Nutrition Facts" box.  *See* 21 U.S.C. § 343(q)(1)(A)-(D).

FDA regulations prescribe "reference amounts customarily consumed" (RACC) for foods across different product categories based on data regarding consumption.  *See* 21 C.F.R. §§ 101.12(a)(1), (2); 101.9(b)(2).  FDA permits the RACC to be translated to a serving size using

a common household measure.  (*See* FAC ¶ 38 (citing 21 C.F.R. § 101.12, Table 2).)  One of these categories of RACCs is for "Fats and Oils," which lists five types:

| Fats and Oils: | | |
|---|---|---|
| Butter, margarine, oil, shortening | 1 tbsp | 1 tbsp (_g); 1 tbsp (15 mL) |
| Butter replacement, powder | 2 g | _tsp(s) (_g) |
| Dressings for salads | 30 g | _tbsp (_g); _tbsp (_mL) |
| Mayonnaise, sandwich spreads, mayonnaise-type dressings | 15 g | _tbsp (_g) |
| Spray types | 0.25 g | About _seconds spray (_g) |

21 C.F.R. § 101.12, Table 2.

FDA regulations contemplate that serving size units are not amenable to a one-size-fits-all approach.  For example, 21 C.F.R. § 101.12(b) n.4 provides that "Manufacturers should use the description of a unit that is most appropriate for the specific product[.]"  FDA regulations also explain how RACCs are determined for certain categories.  For products that are "consumed as an ingredient of other foods, but that may also be consumed in the form in which they are purchased (e.g., butter)," FDA states that the RACC is based "on use in the form purchased."  21 C.F.R. § 101.12(a)(8).

FDA has also issued guidance to reflect the "thinking of the Food and Drug Administration" and to provide non-exhaustive examples of "products that belong in each of the product categories[.]"  (RJN Ex. A at p. 3.)  Under the "Butter, margarine, oil, shortening" category, the examples are "All types of butter and margarine spreads (regular, diet, lite/light, liquid, and whipped); oils; and shortenings."  (*Id*. at p. 19.)  Under the "Spray types" category, the examples are "All types of cooking sprays (e.g., cooking spray olive oil)."  (*Id*. at p. 20.)

The FDCA contains a broad preemption provision that prohibits states or other political subdivisions from directly or indirectly establishing any requirement for nutrition labeling that is not identical to the requirements set forth in § 343(q) or § 343(r)."  *Pardini II*, 2014 WL 265663, at *3; *see also Pardini I*, 961 F. Supp. 2d at 1053; *Walker v. ConAgra Foods, Inc.*, No. 15-cv-02424-JSW, 2016 WL 9087336, at *2 (N.D. Cal. Mar. 23, 2016).

### 1.      Plaintiffs' "Serving Size" Claims Are Expressly Preempted.

#### a.      ICBINBS Is a "Spray Type" Under FDA Regulations.

FDA regulations and guidance establish that ICBINB Spray is properly marketed as a "spray" and not a "substitute butter" product.  As explained above, FDA regulations direct that the type of product a manufacturer selects within the "Fats and Oils" category be "most appropriate for the specific product."  21 C.F.R. § 101.12(b) n.4.  The Court in *Pardini* found that the "Spray type" category was "most appropriate" for ICBINBS:  "Since ICBINBS is dispensed via manual pump, expressing the product's serving size as a number of sprays is not inconsistent with the regulation.  Indeed, it is unclear how else Defendant would express the product's serving size in a manner that a reasonable consumer could measure."  *Pardini I*, 961 F. Supp. 2d at 1055 n.3.  Similarly, ICBINB Spray belongs in  the "Spray type" category because of its "use in the form purchased"—purchased in spray form and dispensed by manually pumping the container.  *See* 21 C.F.R. § 101.12(a)(8).

The labeling, marketing, and advertising of ICBINB Spray is consistent with this "most appropriate" type and its "form" as a spray.  As the FAC acknowledges, Defendants have sold a variety of products under the "I Can't Believe It's Not Butter! ®" brand, including "versions packaged in plastic tub containers, 'all-purpose sticks' that look like sticks of butter, and the ICBINB Spray, which is contained in pump-action squirt bottles."  (FAC ¶ 16; RJN Exs. B-C.)  ICBINB Spray comes in different sized bottles (8-ounce and 12-ounce) and different types ("original" and "olive oil").  (FAC ¶¶ 16, 33; *see also* RJN Ex. B.)  Over the years, ICBINB Spray labels have not only included a serving size for "Cooking," but state on the front that ICBINB Spray is "great" or "perfect" for cooking.  (FAC at pp. 5, 16; RJN Ex. B.)  In fact, named Plaintiffs Zizumbo and Zundel admit that they read that ICBINBS is "great for topping & cooking" on the label.  (FAC ¶¶ 91, 101.)

Further, the "I Can't Believe It's Not Butter!®" website includes recipes that are specific to the various product types in the brand—spreads, sticks, and spray.  (*See* FAC ¶ 18.)  For example, the website includes a recipe for Coconut Ginger Banana Bread with I Can't Believe It's Not Butter!® Spread, and a recipe for Ana's Decadent Flourless Chocolate Cake with I Can't

Believe It's Not Butter!® All Purpose Sticks.  (RJN Exs. D-E.)  Other recipes on the website call for spraying I Can't Believe It's Not Butter!® Spray into a pan before cooking, such as Asparagus N' Parmesan Omelet, and spraying onto vegetables and meats to grill, such as Savory Balsamic Asparagus and Buttery Cilantro Steak.  (*Id.* Exs. F-H.)

Plaintiffs, however, contend that ICBINB Spray "clearly" fits within the "substitute butter" category.  (FAC ¶¶ 48-56.)  They launch four distinct arguments, but each falls flat.

First, Plaintiffs contend that "cooking spray" is inconsistent with ICBINB Spray's "'actual conditions of use,' and is not the product's 'major intended use'."  (FAC ¶ 48.)  Instead, consumers use the product primarily as "a topping and substitute for butter, margarine, and other ICBINB products."  (*Id.*)  But the fact that ICBINB Spray can be used both as a "cooking spray" and a "topping" does "not mean that it is not a cooking spray."  *Pardini I*, 961 F. Supp. 2d at 1055.  "Topping" and "spray" are not mutually exclusive, and there is nothing in FDA regulations or guidance to the contrary.  Nor do Plaintiffs provide any explanation.

Moreover, just because the named Plaintiffs use a different number of sprays than the serving size does not mean that they get to dictate which RACC applies to ICBINB Spray.  Serving sizes are lawfully determined solely by the technical requirements of FDA regulations.  While these amounts are based on customary usage data, *FDA has already compiled that data* and created binding regulations based on it.  *See* 21 C.F.R. §§ 101.12(a)(1), (2) ("FDA calculated the reference amounts" which are "based on data set forth in appropriate national food consumption surveys."); 101.9(b)(2) ("[S]erving size declared on a product label shall be determined from the 'Reference Amounts Customarily Consumed Per Eating Occasion' (reference amounts) that appear in § 101.12(b) using the procedures described below.").  Thus, the "customary usage" of ICBINBS is not to be based on the usage patterns of Plaintiffs, nor is it a question to be decided by this Court.

Nor is ICBINB Spray an interchangeable product or a "substitute" for butter.  A "substitute" food is "one that may be used interchangeably with another food that it resembles, i.e., that it is organoleptically, physically, and functionally (including shelf life) similar to, and that it is not nutritionally inferior to unless it is labeled as an 'imitation.'"  21 C.F.R. § 101.13(d).

DEFENDANTS' MTD FIRST AMENDED COMPLAINT AND MTS CLASS ALLEGATIONS
CASE NO. 4:18-cv-07213-JSW
sf-3991843

12

ICBINBS is a spray.  It doesn't feel or look like a stick or tub of butter, and as a spray, it doesn't function that same way as butter.  (*See* RJN Exs. D-H.)  Having a "buttery taste" is not enough.

Second, the Court in *Pardini* rejected as "conclusory and belied by the facts alleged in the complaint" Plaintiffs' argument that ICBINB Spray is not a "spray" under FDA because it is not like Pam and contains water.  (FAC ¶ 50.)  It concluded that there was no authority offered to show that the FDA's "scant examples" of spray-type fats and oils meant that the category was "exclusive" to those sprays.[8]  *See Pardini II*, 2014 WL 265663, at *5.

Third, Plaintiffs' argument that ICBINB Spray is not a "spray" under FDA because it is a "pump spray" instead of a "pressurized spray" that can be "expressed" in seconds (FAC ¶ 53) was similarly rejected in *Pardini*.  FDA makes clear that the use of particular metrics, such as "seconds [of] spray," are not required.  *Pardini I*, 961 F. Supp. 2d at 1055 (citing 21 C.F.R. § 101.12(b) & n.5).  Rather, manufacturers "should use the description of a unit that is most appropriate for the specific product."  21 C.F.R § 101.12(b).

Fourth, Plaintiffs contend that ICBINB Spray is not a "spray" under FDA because sprays are "not intended to impart flavor on a food" and Defendants never "touted" its non-stick characteristics in advertisements.  (FAC ¶ 55.)  Plaintiffs fail to provide any legal support— whether in FDA regulations or elsewhere—for this conclusory statement.  Again, Plaintiffs' claim is inconsistent with the FDA's expansion of the "spray types" category beyond "nonstick cooking sprays."  *See supra* footnote 8.

Finally, to the extent that Plaintiffs seek to rely on a recent Order from Judge Orrick in an action against ConAgra related to the Parkay Spray product label, it is not persuasive here.  *See Allen v. ConAgra Foods, Inc.*, No. 3:13-cv-1279-WHO (N.D. Cal. Dec. 10, 2018) (ECF No. 231).  As a preliminary matter, Judge Orrick noted that there had been several previous rulings by Judge Tigar rejecting ConAgra's arguments, and found that there was "no reason" to depart from them.

---

[8] This is further supported by the FDA's revision to its examples in the "Spray types" category:  from "Nonstick cooking sprays (e.g., Pam)" to "All types of cooking sprays (e.g., cooking spray olive oil)."  (RJN Ex. A at p. 20.)  This confirms that the FDA did not intend to limit this category to only Pam, or sprays exactly like Pam.

*Id.* at p. 19.  Moreover, Judge Orrick improperly shifted the burden to ConAgra to explain why the product did not fall into the "substitute butter" category instead of requiring the plaintiffs to plead a plausible claim that the product was *not* properly classified as a "cooking spray."  *Id.* at p. 14.  The Court in *Pardini* rejected this approach, finding that the plaintiffs' claims were preempted because ICBINBS's designation as a "Spray type" was not "inconsistent with the regulation."  *Pardini I*, 961 F. Supp. 2d at 1055 n.3.  Indeed, Judge Conti explained that the specific "Spray type" category was more appropriate than the catch-all "Butter, margarine, oil, shortening" category:  "It is true that the food at issue is in the form of a liquid fat or oil, but more specifically it is a spray-type fat or oil."  *Pardini II*, 2014 WL 265663, at *5; *see also, e.g.*, *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1077 (9th Cir. 2011) (specific rule trumps general rule).  The Court should find the same here.

**b.      ICBINBS Serving Sizes Comply With FDA Regulations For "Spray Types."**

During the proposed class period, ICBINBS's "Nutrition Facts" box has provided for two alternative serving sizes:  (1) "1 Spray (0.20g) Cooking Spray"; and (2) "5 Sprays (1g) Topping." (FAC at pp. 7-8)  The current ICBINBS label provides a "1 spray (0.2g)" serving size.  (RJN Ex. B.)

As the Court in *Pardini* found, ICBINB Spray complies with FDA's serving size regulations for "Spray types."  (*See supra* Section IV.B.1.a; *Pardini I*, 961 F. Supp. 2d at 1056; *Pardini II*, 2014 WL 265663, at *6.)  FDA regulations permit the 0.25g Reference Amount to be translated into a serving size using a common household measure, which in the case of ICBINBS is one spray (0.20 g).  *See* 21 C.F.R. § 101.9(b)(2)(iii).  And at "1 gram," the "5 spray" serving size is *four times* the amount required by FDA to be disclosed.  The serving sizes, therefore, comply with FDA regulations.  Because ICBINBS is labeled as a spray and functions as a spray, *it is a spray*, and therefore must be categorized in this group.

**2.      Plaintiffs' Calorie and Fat "Nutrient Content" Claims Are Expressly Preempted.**

Plaintiffs use the same underlying argument—that ICBINBS serving sizes are unlawfully based on the "spray type" instead of the "substitute butter" type—to attack the 0 g fat and 0 calories per serving statements on the ICBINBS label as unlawful "nutrient content" claims. For the same reasons described above, these claims fail.

ICBINBS is 0.08 grams of fat and 0.8 calories per serving. (FAC ¶ 34.) FDA regulations *require* a serving containing less than 0.5 grams of fat be expressed as zero, and *permit* a serving size containing less than 5 calories be expressed as zero. 21 C.F.R. § 101.9(c)(1)-(c)(2). As the Court in *Pardini* recognized, the "0" references on ICBINBS's back label comply with these regulations. *Pardini I*, 961 F. Supp. 2d at 1054; *Pardini II*, 2014 WL 265663, at *4. Because the expressions on the back label were properly rounded down, the Court found Unilever was entitled to make consistent "0" calorie and fat per serving statements on the front label. *Pardini I*, 961 F. Supp. 2d at 1056 (citing *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1120-21 (N.D. Cal. 2010)). The front and back labels referring to "0 g fat" and "0 calories" per serving comply with FDA's mandate, and Plaintiffs' efforts to establish different requirements under state law are expressly preempted.

**3.      Plaintiffs' "Statement of Identity" Claim Is Expressly Preempted.**

FDA regulations require a "statement of identity" on the front label of a product, which can take three forms: (1) a name specified by federal law or regulation; or if none, (2) a "common or usual name;" or, if none, (3) "an appropriately descriptive term." 21 C.F.R. § 101.3(b)(1)-(3). ICBINBS does not have a "common or usual name"—nor do Plaintiffs allege one. ICBINBS labels have thus included a statement of identity under the third "appropriately descriptive term" prong, such as "buttery spray." (FAC at p. 5; 21 C.F.R. § 101.3(b)(3).) The inquiry should end there.

But even if ICBINBS did have a "common or usual name," Plaintiffs' suggestions that the front label should state "40% vegetable oil" or "vegetable oil"[9] are wrong. A "40% vegetable oil" statement of identity relies on 21 C.F.R. § 102.5(b)—which would require that vegetable oil "has a material bearing on price or consumer acceptance." Plaintiffs do not allege materiality here. (*Contra* FAC ¶ 82 (asserting failure to identify the percentage "perpetuated the belief . . . [that ICBINBS] contained a negligible amount of fat and calories on a percentage basis.").)

A "vegetable oil" statement of identity relies on 21 C.F.R. § 102.5(c)—which would require that "consumers may otherwise be misled about the presence" of the ingredient. 21 C.F.R. § 102.5(c). Consumers could not be misled about the *presence* of vegetable oil in ICBINBS where the back label includes soybean oil on the list of ingredients (FAC at p. 8), especially since the named Plaintiffs read the ingredient list.[10] Moreover, 21 C.F.R. § 102.5(c) requires such a statement of identity only where consumers "generally understand" the common or usual name of the food to include an ingredient. *Cardona v. Target Corp.*, No. CV 12-1148-GHK (SPx), 2013 WL 1181963, at *9-10 (C.D. Cal. Mar. 20, 2013) (explaining that consumers do not think the common or usual name "honey" means "honey with pollen," and thus "pollen" was not a characterizing ingredient). Plaintiffs do not allege that consumers understood ICBINBS to have any common or usual name that includes vegetable oil.

### 4.     Plaintiffs' "Asterisk" Claim Is Expressly Preempted.

The "asterisk" claim asserted by plaintiffs across the ICBINBS cases has evolved over time. In the FAC, Plaintiffs appear to contend that the asterisk next to the ingredient soybean oil that directs a consumer to the statement below the ingredient list "*ADDS A DIETARILY

---

[9] It is unclear which statement of identity Plaintiffs allege is required. (*Compare* FAC ¶ 79 (arguing that the label must "tell[] consumers that [ICBINBS] is actually 40% vegetable oil"), *with id.* ¶ 80 (saying that the label does not "contain any information about the presence of any characterizing ingredient").) Neither is required.

[10] In the original complaint, Plaintiffs admitted to reading the ingredient list. (Compl. ¶¶ 78, 88, 98.) After Unilever filed its motion to dismiss, Plaintiffs amended their complaint to allege that they read the "nutritional panel" and "back label." (FAC ¶¶ 92, 102, 112.) While the ingredient list is part of the nutritional panel and back label, Plaintiffs are still held to their original admission. (*Bauer v. Goss*, No. 12-cv-876-JSW, 2012 WL 2838834, at *3 (N.D. Cal. July 20, 2012) (White, J.) (explaining plaintiffs cannot "avoid the implications of those factual allegation[s] by omitting them" in an amended complaint with no "credible explanation").)

INSIGNIFICANT AMOUNT OF FAT," is false and misleading because the product actually contains "significant" amounts of fat.  (FAC ¶¶ 25-27.)  FDA fat content regulations preempt this claim.  Section 101.62(b)(ii) allows a label to use the term "dietarily insignificant amount of fat" where (1) the food contains less than 0.5g of fat per reference amount customarily consumed and per labeled serving; and (2) it includes an asterisk next to any ingredient that is a fat or generally understood by consumers to contain fat.  Because ICBINBS is a "Spray type" and contains 0.08 grams of fat per serving (*see supra* Sections IV.B.1-2), FDA regulations permit the asterisk.

*** 

Plaintiffs' "not identical" labeling requirements are expressly preempted, as the Court found in *Pardini I* and *II*.[11]  Without a predicate statutory violation, Plaintiffs have also failed to state an "unlawful" claim under the UCL.[12]

### C.  Plaintiffs Fail to Allege Plausible Claims of Reliance and Deception.

Statements are actionable only if they are likely to deceive a reasonable consumer.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (California consumer protection statutes, including the UCL, FAL, and CLRA, are governed by the "reasonable consumer" test).  Likely to deceive implies "more than a mere possibility" that a statement "'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter &*

[11] If the Court declines to find Plaintiffs' claims expressly preempted, it should dismiss this action on primary jurisdiction grounds. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ("The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."); *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780-81 (9th Cir. 2002) (discussing four-factor test for application of primary jurisdiction doctrine); *Barnes v. Campbell Soup Co.*, No. 3:12-cv-05185-JSW, 2013 WL 5530017, at *9 (N.D. Cal. July 25, 2013) (granting motion to dismiss and referring to FDA the question of whether genetically modified organisms can be present in foods labeled "natural").

[12] Plaintiffs' UCL "unlawful" claim fails for the same reasons: Defendants have complied with FDA regulations and therefore there is no predicate statutory violation. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1049 (S.D. Cal. 2018); *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001).  Because Plaintiffs' UCL "unlawful" claim is predicated on violations of the FDCA (FAC ¶ 180) but they have not pled such violations, the claim should be dismissed.

*Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, the statement must be "such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508. "Thus, where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010).

### 1.   Plaintiffs' Proposed 40 Spray Serving Size Is Implausible.

Plaintiffs' first deception claim—that the serving size required by FDA regulations is deceptive because "it is common for consumers to open the spray top of the bottle and simply pour the ingredients onto items such as baked potatoes, popcorn, vegetables, and other items"— rests on the same arguments Plaintiffs assert to try to avoid preemption: that ICBINBS is a not a "spray type" but a "butter," and that consumers who use more than one serving should dictate the serving size. (FAC ¶¶ 1, 65.) The Court in *Pardini* rejected both arguments as implausible. The Court found it "far more plausible in this case that, as Plaintiffs themselves state, 'Manufacturers must use the defaulted serving size of one tablespoon for any 'Fat and Oil' *unless the product fits within a more specific subcategory*.'" *Pardini II*, 2014 WL 265663, at *5. "The subcategory here, according to the regulations and the face of the FAC, is 'Fats and Oils: Spray Type.'" *Id.*[13]

Next, the Court explained it "does not find that the fact that some consumers might choose to use more of a product means that the product is mislabeled. Plaintiffs' pleadings stretch plausibility too far, suggesting a state of regulatory affairs in which any consumer could overcome a motion to dismiss in a case like this one by insisting that people consume more (or less) of a product these days, rendering all sorts of products mislabeled at a consumer's whim."

---

[13] To the extent that Plaintiffs contend that removal of the second serving size (5 sprays) makes the current ICBINBS label somehow more deceptive (FAC ¶ 29), the Court in *Pardini* rejected that argument too. FDA regulations specify certain circumstances where a product has to have a second column of nutrition information. (*Id.* ¶ 59 (citing 21 C.F.R. § 101.9(b)(11)).) But 21 C.F.R. § 101.9(b)(11) specifically states that products used as ingredients (e.g. oils) or for multipurposes (e.g., butter, margarine) are exempt from this requirement. The Court found that, even under Plaintiffs' characterization of the product, ICBINBS "appears to fit" within that exemption. *Pardini II*, 2014 WL 265663, at *6.

*Pardini II*, 2014 WL 265663, at *5.  Indeed, the Court specifically rejected the "butter" serving size that Plaintiffs contend applies here (FAC ¶ 47):  if "it takes forty sprays to fill a tablespoon, then Plaintiff's claim rests on the implausible assumption that consumers customarily pump a container of ICBINBS forty times per serving.  *Pardini I*, 961 F. Supp. 2d at 1056; *Pardini II*, 2014 WL 265663, at *6 ("Plaintiffs' insistence that the serving size should be listed as forty sprays remains implausible.").[14]

### 2. Plaintiffs' Reliance on Serving Size Statements to Extrapolate Calories and Fat in ICBINBS Product Is Implausible.

Plaintiffs' second deception claim regarding fat and calorie content of ICBINBS similarly fails to show reliance—the *how* of their deception claim.[15]

Here, Plaintiffs assert broad and conclusory allegations that they "believed" ICBINBS "had no fat and no calories."  (FAC ¶ 142.)  But they do not allege that they understood the "0g fat" and "0 calories" per serving statements to apply to the entire bottle, or to any amount other than a single serving size.  Courts have dismissed such claims, alleging that a true statement about part of a product can be extrapolated to a deceptive statement about the product as a whole, as implausible.  *See, e.g.*, *Rosen v. Unilever U.S., Inc.*, No. C 09-cv-02563 JW, 2010 WL 4807100, at *5 (N.D. Cal. May 3, 2010) (granting motion to dismiss action against ICBINB spread products).  In *Rosen*, plaintiffs alleged that the ICBINB spread label was deceptive because it included the statement "Made with a Blend of Nutritious Oils" but was made with "nutritious" plant oils, as well as "non-nutritious" partially hydrogenated oil.  2010 WL 4807100, at *3.  The Court found plaintiffs' claims implausible based on the "fallacy of composition"—that "the whole is nothing more than the sum of its parts."  *Id.* at *5.

[14] In the *ConAgra* Order, Judge Orrick concluded that the plaintiffs had a plausible argument that the "butter" category applies to Parkay Spray.  *Allen v. ConAgra Foods, Inc.*, No. 3:13-cv-1279-WHO (N.D. Cal. Dec. 10, 2018) (ECF No. 231) at pp. 16-17.  For the same reasons discussed above (*see supra* Section IV.B.1.a), the Court should decline to adopt Judge Orrick's conclusion.

[15] In order to state a claim based on deception under any of Plaintiffs' causes of action, they must plead actual reliance.  *E.g.*, *Maxwell v. Unilever United States, Inc.*, No. 5:12-cv-1736-EJD, 2018 WL 1536761, at *6 (N.D. Cal. Mar. 29, 2018); *Vieste, LLC v. Hill Redwood Development*, No. C 09–04024 JSW, 2010 WL 4392939, at *7 (N.D. Cal. Oct. 29, 2010).

The same is true here. As discussed in Section IV.B.3, the named Plaintiffs admit that they read the ingredient list, which includes soybean oil and sweet cream buttermilk, and the asterisk discloses a dietarily insignificant amount of fat in soybean oil. (FAC at pp. 6-7; *id.* ¶¶ 92, 102, 112.) As such, Plaintiffs run afoul of the Ninth Circuit's decision in *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995), which presumes the reasonable consumer considers statements in context and reads them holistically. In *Freeman*, the Ninth Circuit held that a promotional offer was not deceptive because "[a]ny ambiguity that [the plaintiff] would read into any particular statement is dispelled by the promotion as a whole." *Id.* at 290. Other courts have dismissed claims for the same reasons. *E.g.*, *Maxwell*, 2018 WL 1536761, at *6 (finding no deception where a label "read in its entirety" revealed that a product contained artificial ingredients); *Hairston v. S. Beach Bev. Co., Inc.*, No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) ("all natural" claim was not deceptive on its face where it was followed with language clarifying that the product contained additional vitamins).

### D.    Plaintiffs' Omission Claims Are Not Plausible and Do Not Give Rise to a Duty to Disclose.

Plaintiffs next try to repackage their misrepresentation claims as omissions claims, but that fails for the same reasons set forth above. Specifically, Plaintiffs contend that Defendants failed to disclose the amount of calories and fats in the product, and failed to disclose that the product contains "40% vegetable oil" in a statement of identity. (FAC ¶¶ 1, 28, 63, 72.) Plaintiffs fail to plead a viable omissions claim here.

An omission is actionable if it is "contrary to a representation actually made by the defendant" or "of a fact that the defendant was obliged to disclose." *Sud v. Costo Wholesale Corp.*, 229 F. Supp. 3d 1075, 1085  (N.D. Cal. 2017) (White, J.) (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)); *see also id.* at 838 (finding that plaintiff failed to state a UCL claim because the failure to disclose a fact one has no affirmative duty to disclose is not likely to deceive a reasonable consumer). As with claims based on an alleged affirmative misrepresentation, a plaintiff must demonstrate plausibility on an omission claim. *Sud*, 229 F. Supp. 3d at 1083 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)); *accord Daniel v.*

*Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).  Here, Plaintiffs cannot explain how either disclosure would be material where they read the ingredient list, which disclosed that there was fat in the product.  (FAC at pp. 7-8; *see supra* Section IV.C.2.)

Moreover, Plaintiffs have not alleged any duty to disclose.  "California courts have . . . rejected a broad obligation to disclose[.]"  *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  The court in *Wilson* made clear that "for the omission to be material, the failure must [still] pose 'safety concerns'."  *Id.* at 1142 (quoting *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010)).  Plaintiffs allege no safety concerns here.[16]  Indeed, in *Hodson v. Mars Inc.*, the Court relied on *Wilson* to hold that the "duty to disclose does not extend to situations, as here, where information may persuade a customer to make different purchasing decisions."  162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016).  That is exactly the situation here: Plaintiffs seek to impose a duty to disclose that will purportedly impact consumer purchases of ICBINBS.  Plaintiffs' omission claims fail.

**E.    Plaintiffs' Claims Sounding in Fraud Are Not Pled with the Requisite Particularity.**

Plaintiffs cannot plead plausible claims, and therefore fail to meet Rule 9(b)'s heightened pleading standard of particularity.[17]  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged," and the circumstances indicating fraudulent conduct.  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

First, Plaintiffs' allegations of *what* they purchased fail the Rule 9(b) standard.  Plaintiffs do not allege how many bottles of ICBINBS they purchased, or which size or type of bottle they

---

[16] To the extent that Plaintiffs argue they need not prove a safety hazard, but instead only a defect going to the central functionality of the product, *Hodson v. Mars Inc.*, 891 F.3d 857 (9th Cir. 2018) did not go as far as removing the safety hazard requirement for omission-based claims. But regardless, in context with the other disclosures on the label (e.g., soybean oil and sweet cream buttermilk on first line of ingredients, and asterisk disclosing fat), Plaintiffs have not alleged a defect that undermines the central function of ICBINBS.

[17] Because Plaintiffs fail to properly plead fraud, their request for exemplary damages fails too. *See, e.g.*, *Vieste, LLC*, 2010 WL 4392939, at *7 (linking survival of prayer for punitive damages with fraud claim).

purchased. (FAC ¶¶ 91, 101, 111.) They fail to even allege that the pictures included in the FAC are of the product they actually purchased. (*Id.* at pp. 5-8.) Plaintiffs' failure to allege exactly what they purchased is inadequate. *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087-BTM (AJB), 2010 WL 1838080, at *2 (S.D. Cal. May 5, 2010) (dismissing claims when the plaintiff did not allege which product he consumed and when he was exposed to the allegedly deceptive statements and omissions other than "prior to May 2009").[18]

Second, as explained above, Plaintiffs' allegations of reliance are also lacking. Plaintiffs allege that they each "relied on Defendants' representations that the ICBINB Spray was fat and calorie free in deciding to purchase ICBINB Spray each time she purchased the product." (FAC ¶¶ 93, 103, 113.) That is not enough. Plaintiffs do not allege how the "0 calories" and "0 g fat" per serving statements, or the lack of a "40% vegetable oil" statement, were misleading— especially in light of the ingredient list and asterisk on the back label. [19] (*See supra* Section IV.C.2.) Plaintiffs' claims fail the stringent pleading requirements of Rule 9(b).

**F.      Plaintiffs Lack Standing to Rely on ICBINBS Website Statements.**

While the FAC cites to various portions of the ICBINBS website as support for their claims (FAC ¶¶ 18, 23, 32-33, 51, 56-57, 140), Plaintiffs lack standing to rely on these statements. Nowhere in the FAC do Plaintiffs say that they ever went on the ICBINBS website,

---

[18] A plaintiff has no Article III standing to sue for products she never purchased because she cannot meet the injury requirement. *E.g.*, *Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010). Here, Plaintiffs allege that they purchased "ICBINB Spray" (FAC ¶¶ 91, 101, 111) but do not allege which products: for example, whether they purchased ICBINBS across all versions of its label. Plaintiffs cannot argue that they have standing to sue over unpurchased products that are "substantially similar" because Plaintiffs have not put forth specific, unrefuted facts demonstrating that unpurchased products are, in fact, substantially similar to purchased ones. *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2014 WL 6657809, at *4-5 (N.D. Cal. Nov. 21, 2014) (dismissing claims regarding unpurchased products where the complaint failed to provide "any details regarding the products' ingredients, labeling, or packaging"). It is Plaintiffs' burden to establish standing and they have not done so.

[19] To the extent that Plaintiffs assert a claim based on the "ADDS A DIETARILY INSIGNIFICANT AMOUNT OF FAT" asterisk (FAC ¶ 28), that claim fails Rule 9(b) because Plaintiffs do not allege whether they saw the asterisk statement and if so, how it affected their purchasing decision. *E.g.*, *Chase v. Hobby Lobby*, No. 17-CV-00881-GPC-BLM, 2017 WL 4358146, at *8-10 (S.D. Cal. Oct. 2, 2017) (granting motion to dismiss asterisk claim under 9(b)).

let alone looked at any other ICBINBS marketing or advertising.[20]  A consumer cannot be deceived by something she never saw.  *Cf. Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181-82 (9th Cir. 2003) (holding there is no UCL violation by a consumer claiming to have been deceived by false statements printed on the "jacket" of a video where he purchased via telemarketing and nothing he saw pre-purchase could have affected the purchase decision); *accord Sud*, 229 F. Supp. 3d at 1084 (explaining that while plaintiffs "refer to generally 'false statements in [Costco's] television, radio, and print advertising, website, brochures, and . . . other written and oral materials,' they do not allege with particularity any advertisements on which they relied). Because Plaintiffs do not allege to have read and relied on the disputed website statements, they lack standing to pursue claims based on those allegations.

**1.      Plaintiffs Lack Standing to Seek Injunctive Relief.**

Plaintiffs lack Article III standing for an additional reason:  they request injunctive relief but have not alleged with concreteness that they will purchase the product again.  Injunctive relief requires plaintiffs to plead a "threat of injury [that is] 'actual and imminent, not conjectural or hypothetical.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  In a false advertising case like this one, plaintiffs have standing if they allege that they "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."  *Davidson*, 889 F.3d at 969-70.  "A 'some day' intention[ ]—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do[es] not support a finding of the 'actual or imminent' injury that" Article III requires.'"  *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (some alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)).

---

[20] While the fact that Plaintiffs' failure to allege anyone read or relied on the website statements is dispositive, Plaintiffs' use of website recipes to support their proposed serving size is unpersuasive.  Even if a recipe on the website calls for more than 1 spray of ICBINBS for a recipe, the recipe never suggests that it calls for a single serving of ICBINBS per person.  (FAC ¶ 57.)

Plaintiffs fail to meet this pleading standard. Plaintiffs allege only that they "continue to desire to purchase fat free, calorie free butter substitutes" from Unilever. (FAC ¶ 121.) But Plaintiffs do not describe any concrete plans to purchase the ICBINBS product again. The only thing they are sure of is that they *will not* purchase the product until the unspecified date when "Defendants are compelled to utilize accurate serving sizes and present accurate nutritional information on their packaging." (*Id.*) This is insufficient.[21] *Victor v. R.C. Bigelow, Inc.*, 708 F. App'x 333, 334 (9th Cir. 2017) (explaining there is no standing where plaintiffs do not intend to purchase product again "until they receive an injunction"); *cf. Lanovaz*, 726 F. App'x at 591.

### G.       Plaintiffs' Class Definition Is Geographically Overbroad.

The Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court* (*BMS*), 137 S. Ct. 1773 (2017), forecloses personal jurisdiction over the claims of out-of-state putative class members in California. Because this defect is apparent on the face of the FAC, the Court should strike the nationwide class allegations.

This Court lacks specific personal jurisdiction over non-California residents' claims against Defendants because those claims do not arise out of Defendants' contacts with California. In *BMS*, the U.S. Supreme Court concluded that a California state court could not exercise specific personal jurisdiction over Bristol-Myers (a Delaware company headquartered in New York) as to non-California-resident plaintiffs' claims of injury from a drug they did not purchase, use, or from which they suffered no injuries in California. 137 S. Ct. at 1781-82. "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781.

---

[21] Plaintiffs also lack standing because they now know the fat and calorie content of ICBINBS and can no longer be 'deceived' by that label. *See, e.g.*, *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-1628-GPC-WVG, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018) (dismissing injunctive relief on standing grounds because plaintiff knew how the allegedly deceptive "net carbs" calculation was made). This is particularly true for Plaintiffs' alleged 'statement of identity' omission as the current ICBINBS label now reads "40% vegetable oil spray." (*See* FAC ¶ 79; RJN Ex. B; *Palmer v. Apple*, No. 5:15-cv-5808-RMW, 2016 WL 1535087, at *4 (N.D. Cal. Apr. 15, 2016) (finding plaintiff lacks standing to pursue injunctive relief where alleged defect resolved).)

As alleged in the FAC, Defendants are Delaware corporations with their principal places of business in New Jersey.  (FAC ¶¶ 5-7.)  Thus, neither is subject to general jurisdiction in California.  *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014) (holding that other than in "exceptional case[s]," a corporation is only subject to general jurisdiction in its state of incorporation and in its principal place of business).  Plaintiffs are California residents (FAC ¶¶ 2-4), but seek to represent a class of "[a]ll persons who, between October 15, 2014 and the present, purchased, in the United States, any size bottle ICBINB Spray" (*id*. ¶ 122).  As to the claims of out-of-state members of the putative class, no suit-related activity has taken place in California.  Consequently, this Court may not exercise specific personal jurisdiction over Defendants as to the claims of out-of-state members of the putative class, irrespective of the "minimal or no inconvenience" to Defendants in litigating here.  *BMS*, 137 S. Ct. at 1778-81; *see also DeBernardis v. NBTY, Inc.,* No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (dismissing consumer claims of putative out-of-state class members noting that "it is more likely than not . . . that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions . . . where there is not general jurisdiction over the Defendants"); *McDonnell v. Nature's Way Prod., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (finding that the Court lacked jurisdiction over claims asserted by out-of-state unnamed class members who were included in a multi-state class represented by a resident named plaintiff); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig*., No. 16-CV-06391-BLF, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018).  The Court should strike the nationwide class averments.  *Cf. Clark v. Group Hospitalization & Med. Servs., Inc.*, No. 10-CV-333-BEN (BLM), 2010 WL 5093629, at *8 (S.D. Cal. Dec. 7, 2010) (granting motion to strike nationwide class allegations based on UCL claims, with leave to amend the class definition to include only "California residents").

## V.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the FAC with prejudice and strike Plaintiffs' overbroad class definition.

Dated:  March 1, 2019                        MORRISON & FOERSTER LLP

                                    By:   */s/ Claudia M. Vetesi*
                                          Claudia M. Vetesi

                                    Attorneys for Defendants
                                    UNILEVER UNITED STATES, INC.,
                                    UPFIELD US INC. AND UPFIELD
                                    SOURCING US, INC.