**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
ANTHONY PATEK (State Bar No. 228964)
KRISTEN SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469
adam@gutridesafier.com
seth@gutridesafier.com
anthony@gutridesafier.com

UREKA E. IDSTROM (*pro hac vice*)
THE EUREKA LAW FIRM
5605 Belinder Road
Fairway, KS 66205
Telephone: (816) 665-3515
uidstrom@eurekalaw.com

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER ZIZUMBO, CHANDRA ZUNDEL, and ADRIANNE ORDAZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:18-cv-07213-JSW<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br>DATE: May 3, 2019<br>TIME: 9:00 a.m.<br>CTRM: 5, 2nd Floor<br><br>HONORABLE JUDGE WHITE |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iv

I.   INTRODUCTION ......................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................. 2

    A. Defendants Falsely Advertise ICBINB Spray as a Fat-Free, Zero Calorie Topping. ........................................................................................................ 2

    B. Defendants Have Intentionally Misclassified the ICBINB Spray to Mislead Consumers Into Believing the Product Is Fat and Calorie Free. ..................... 3

        1.  ICBINB Spray Is Not A Cooking Spray. .......................................... 3

        2.  ICBINB Spray Is a Topping and Butter Substitute. ......................... 3

    C. Unilever Wrongfully Made Zero Calorie Claims Without Complying With The Entire Regulatory Scheme Pertaining To Those Claims. ............................... 4

    D. Unilever and the Upfield Defendants Share Responsibility for the Brand. ....... 4

    E. Plaintiffs All Purchased the Product Believing That It Was Fat and Calorie-Free. ................................................................................................................. 5

III. ARGUMENT ................................................................................................. 5

    A. Plaintiffs May Pursue Claims Against Unilever For Deceptively Advertising the Sprays. ...................................................................................................... 6

        1.  Plaintiffs Have Standing to Sue Unilever. ........................................ 6

        2.  Plaintiffs Plausibly Pled that Unilever is Liable. ............................. 7

    B. Plaintiffs' Claims Seek to Impose Requirements Identical to the FDA's and Thus Are Not Preempted. ............................................................................... 9

        1.  Defendants Must Overcome The Strong Presumption Against Preemption. ....................................................................................... 9

        2.  The Food, Drug And Cosmetics Act Does Not Expressly Preempt The Laws At Issue In This Case. .................................................... 9

        3.  Plaintiffs' Serving Size Claims Are Not Preempted. ...................... 10

           a. Overview Of The Serving Size Regulatory Scheme ................. 11

           b. Defendants Have Not Carried Their Burden to Show That Plaintiffs' Plausible Allegations As To The Misclassification Of The ICBINB Spray Are Preempted. ......................................... 11

             (1) Defendants Have Not Established That There Is No Plausible Basis For Plaintiffs' Claims That The ICBINB Spray Is Not A Cooking Spray. ......................................................................... 12

(2) Defendants Have Not Established That The Classification of the
ICBINB Spray as a Butter Would Impose Requirements
Different Requirements Than The FDA Has Set. ...............................14

4.   Even If Defendants Are Using The Proper Serving Size Classification,
Defendants' Labeling Still Violates FDA Regulations....................................16

5.   Plaintiffs' Statement of Identity Claims Are Not Preempted. ..........................16

C.  Plaintiffs Have Plausibly Alleged Classwide Reliance and Deception. .......................17

D.  Plaintiffs' Omissions Claims Are Adequately Pled. ....................................................19

E.  Plaintiffs' Fraud Claims Satisfy Rule 9(b)....................................................................20

F.  Allegations Relating to Representations on Defendants' Website Are Proper.............22

G.  Plaintiffs Have Standing to Seek Injunctive Relief. ....................................................22

H.  Plaintiffs Adequately Plead Claims for a Nationwide Class.........................................24

IV.   CONCLUSION.........................................................................................................................24

TABLE OF CONTENTS

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. ConAgra Foods, Inc.*, 2013 U.S. Dist. LEXIS 125607 (N.D. Cal. Sep. 2, 2013) ("Allen I") .................................................................................................................................... passim

*Allen v. ConAgra Foods, Inc.*, 2018 U.S. Dist. LEXIS 208196 (N.D. Cal. Dec. 10, 2018) ("Allen II") ................................................................................................................................... passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 5

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D. Cal. May 26, 2011) .......... 20

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ............................................ 13

*Becerra v. Coca-Cola Co.*, 2018 U.S. Dist. LEXIS 31870 (N.D. Cal. Feb. 27, 2018) ................. 10

*Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 5

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ....................................... 24

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) ...................................................................... 9

*California v. ARC America Corp.*, 490 U.S. 93 (1989) ............................................................. 9

*Clancy v. The Bromley Tea Co.*, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) ........................... 21

*Colgan v. Leatherman Tool Group, Inc.* 135 Cal. App. 4th 663 (2006) ..................................... 18

*Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ........................................................... 8

*Corazon v. Aurora Loan Servs., Ltd. Liab. Co.*, 2011 U.S. Dist. LEXIS 52712 (N.D. Cal. May 5, 2011) ................................................................................................................................... 9

*Cummings v. Harris*, 2015 U.S. Dist. LEXIS 99197 (N.D. Cal. July 28, 2015) ........................... 8

*Dachauer v. NBTY, Inc.*, 913 F.3d 844 (9th Cir. 2019) ............................................................ 16

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ....................................... 22, 23

*DeBernardis v. NBTY, Inc.*, , 2018 U.S. Dist. LEXIS 7947 (N.D. Ill. Jan. 18, 2018) .................. 24

*Duran v. Hampton Creek*, 2016 U.S. Dist. LEXIS 41650 (N.D. Cal. Mar. 28, 2016) ................. 22

*Durnford v. MusclePharm Corp.*, 907 F.3d 595 (9th Cir. 2018) ........................................... 9, 10

*Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 78607 (S.D. Cal. May 9, 2018).. 10

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 U.S. Dist. LEXIS 155654 (Sept. 22, 2017) .................................................................................................................................. 24

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ................................................................ 18

*Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) ..................................................... 9

*Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................... 16

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) ............................... 18, 20

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ...................................................... 20

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) .......................................................... 19

*In re Chinese-Manufactured DryWall Products*, 2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov. 28, 2017) ................................................................................................................... 24

*In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090 (C.D. Cal. 2012) .......................................... 20

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ................................................................................................................... 24

*ITT Cont'l Baking Co. v. F.T.C.*, 532 F.2d 207 (2d Cir. 1976) ............................................... 23

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ..................................................... 20

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ........................................ 8

*Kosta v. Del Monte Corp.*, 2013 U.S. Dist. LEXIS 69319 (N.D. Cal. May 15, 2013) ................. 14

*Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310 (2010) ....................................................... 23

*Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) ...................................... 22

*Lilly v. ConAgra Foods, Inc.,* 743 F.3d 662, 665-666 (9th Cir. 2014) ....................................... 12

*Machlan v. Procter & Gamble*, 77 F. Supp. 3d 954 (2015) ............................................... 7, 23

*Maxwell v. Unilever, Inc.*, 2018 U.S. Dist. LEXIS 54222 (N.D. Cal. Mar. 29, 2018) ................. 19

*McDonnell v. Nature's Way Prod., LLC*, 2017 U.S. Dist. LEXIS 177892 (N.D. Ill. Oct. 26, 2017) ........................................................................................................................... 24

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ...................................................................... 9

*Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir. 1989) ............................................ 8

*Moses v. Innoprise Software*, 2014 U.S. Dist. LEXIS 22407 (N.D. Cal. Feb. 21, 2014) ............... 8

*Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013) ("*Pardini I*") ... 11, 14, 19

*Pardini v. Unilever United States, Inc.*, 2014 U.S. Dist. LEXIS 7900 (N.D. Cal. Jan. 22, 2014) ("*Pardini II*") ............................................................................................................... 11

*Roberts v. Corrothers*, 812 F.2d 1173 (9th Cir. 1987) ............................................................ 6

*Rosen v. Unilever United States, Inc.*, 2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010) .. 18

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .................................................................. 8, 21

*Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075 (N.D. Cal. 2017) .................................. 20

*Sun Valley v. Ernst Enterprises, Inc.,* 711 F.2d 138 (9th Cir. 1983) ......................................... 7

*Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012)..............................6

*United States ex rel. Vatan v. QTC Med. Servs.*, 721 F. App'x 662 (9th Cir. 2018) ......................8

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987)...............................................6

*Vasic v. Patent Health, L.L.C.*, 2013 U.S. Dist. LEXIS 125633 (S.D. Cal. Sep. 3, 2013) .............7

*Victor v. R.C. Bigelow, Inc.*, 708 F. App'x 333 (9th Cir. 2017) ...................................... 23

*Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013)
................................................................................................................... 12, 14, 15

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008)...........................................18, 19

*Wilson v. Hewlett Packard Co*, 668 F.3d 1136 (9th Cir. 2012) .................................................... 20

**Statutes**

21 U.S.C. § 343-1(a) ...........................................................................................9, 10

21 U.S.C. § 393(b)(2)(A) ............................................................................................9

Bus. & Prof. Code, § 17203 ...................................................................................... 23

**Regulations**

21 C.F.R. § 1.21(a) ..............................................................................................4, 16

21 C.F.R. § 100.1(c)(4) ............................................................................................ 10

21 C.F.R. §101.2 .......................................................................................................3

21 C.F.R. § 101.12 .................................................................................................. 11

21 C.F.R. § 101.12(f) ............................................................................................... 17

21 C.F.R. § 101.21 .................................................................................................. 16

21 C.F.R §101.60(b)(i) ............................................................................................. 11

21 C.F.R §101.62(b)(i) ............................................................................................. 11

21 C.F.R. § 101.9 ...............................................................................................11, 12

21 C.F.R. §101.9(c) ................................................................................................. 11

21 C.F.R. § 101.12(a)(7) ......................................................................................11, 15

21 C.F.R. §101.12(f) ............................................................................................... 18

21 C.F.R. §101.12(h) ............................................................................................... 11

21 C.F.R. §101.13(d) ............................................................................................... 15

21 C.F.R. §102.5(d) ...................................................................................4, 16, 17, 19

## I.      INTRODUCTION

Defendants Unilever USA, Inc., Upfield Sourcing US, Inc. and Upfield US, Inc. have advertised their I Can't Believe It's Not Butter Spray ("ICBINB Spray") as containing zero fat and zero calories for years, despite the fact that it is loaded with fat and calories. Their justifying pretense is that the product is a cooking spray, with a serving size of one spray (0.2 grams) so there is less than one gram of fat or a full calorie. But Defendants know that 0.2 grams of the product cannot be used as a cooking spray; and they market the product not as a cooking spray but as a buttery topping for foods. The FDA ***requires*** Defendants to select a serving size that reflects a product's "major intended use," so Defendants must use the same serving size as other buttery toppings, which is one tablespoon, or more than 3 grams of fat and 32 calories per serving. Defendants also omitted for years the required statement that the product contains 40% vegetable oil. Millions of consumers, including the three named Plaintiffs, have been misled, paying a steep premium for a product that is the opposite of the no calorie, fat-free food they were promised.

Defendants' motion to dismiss is flawed in numerous respects. Unilever claims it has transferred all responsibility for the product to the Upfield Defendants, but numerous fact issues remain before this Court may apportion liability among the Defendants. That is particularly true since packages sold as recently as this year identify "Unilever" as the seller with no mention of either Upfield entity. Nor can Plaintiffs be faulted for making allegations against "Defendants" jointly and severally when the facts remain unknown to them.

Defendants argue that the Food, Drug, and Cosmetic Act ("FDCA") preempts the claims, but FDCA preemption is an affirmative defense that cannot be resolved under Rule 12, particularly as the Complaint alleges numerous facts supporting a reasonable inference that the ICBINB Spray is mislabeled under the FDA's implementing regulations. Ignoring the Complaint, Defendants rest on Judge Conti's prior orders in a related case, *Pardini v. Unilever USA, Inc*, 4:13-cv-1675 ("*Pardini*"). But *Pardini* applied the wrong standard for analyzing preemption, and in any event the First Amended Complaint provides facts and regulations that *Pardini* did not address. Indeed, in a similar case involving nearly identical claims against a different spray butter manufacturer, *Allen v. ConAgra Foods, Inc.*, 3:13-cv-1279 ("*Allen*"), Judges Orrick and Tigar both found that the

FDCA does not preempt claims basically identical to those asserted here.

Defendants run through a litany of boilerplate argument raised in food labeling cases, none of which provide a basis for their Rule 12 motion. Defendants claim that reasonable consumers would not understand zero calories and fat per serving to mean that the entire package has zero calories and fat, but Plaintiffs have reasonably pleaded otherwise, given that zero times zero is zero, and the package nowhere discloses that it has any fat or calories. They make up new standards under Rule 9(b), claiming that Plaintiffs must plead with specificity a variety of irrelevant pieces of information, such as whether they purchased eight ounce or twelve ounce bottles, but courts invariably reject these kinds of arguments. They insist that because Plaintiffs pled that they reviewed the back of the package "generally," this Court must infer that Plaintiffs read and understood every word appearing thereon, and thus, reliance cannot be shown. Not only is this not the law, but the back of the bottle is no less deceptive than the front. They attack Plaintiffs' standing to seek injunctive relief, but Plaintiffs' allegations are sufficient under Ninth Circuit precedent. Finally, they argue that Plaintiffs' proposed nationwide class claim for unjust enrichment must be stricken for lack of personal jurisdiction pursuant to *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), but numerous courts have held that *Bristol-Myer*s does not apply to federal court class actions. This Court should reject Defendants' motion in full.

## II.    STATEMENT OF FACTS

### A.    Defendants Falsely Advertise ICBINB Spray as a Fat-Free, Zero Calorie Topping.

Defendants manufacture and market a buttery topping product called I Can't Believe It's Not Butter ("ICBINB") Spray, which they falsely advertise as being fat and calorie free. First Amended Complaint, Dkt. # 20 ("FAC") ¶¶ 1, 16, 20-21. While each 12-oz bottle contains 1,160 calories and 124 grams of fat, *id.* ¶ 33, Defendants print "0 calories" on the front of the package, and on the back nutrition panel, state that it has no calories and "0g" of fat per serving. *Id.* ¶¶ 20, 25, 27. To compound the deception, Defendants for years omitted from the front label a statement of identity that the product is 40% vegetable oil, which the FDA requires. *Id.* ¶ 20, 72, 79. Defendants rationalize their conduct by using an unlawfully small serving size so that they can round down the number of fat and calories in the ICBINB Spray, and thereby mislead consumers

into believing they are buying a fat and calorie free butter product. *Id*. ¶ 34.

**B.      Defendants Have Intentionally Misclassified the ICBINB Spray to Mislead Consumers Into Believing the Product Is Fat and Calorie Free.**

To select an appropriate serving size for purposes of calculating nutritional information, the FDA requires companies to choose an appropriate "reference" category for their food, and use the corresponding serving size. FAC ¶ 38. While Defendants have selected the "cooking spray" category, the correct reference category for this product is "butter, margarine, oils, and shortening," which requires a serving size of 1 tablespoon. *Id*. ¶¶ 45-46.

**1.      ICBINB Spray Is Not A Cooking Spray.**

Defendants classified the ICBINB Spray as a cooking spray type product for which the FDA requires a serving size of 0.25 grams. (Defendants' serving size is actually 0.2 grams.) But this classification is wrong, because Defendants must select a reference category that reflects the product's "actual conditions of use," and the ICBINB Spray is not a cooking spray. FAC ¶ 39, 48. Cooking sprays are 100% oil packaged in a pressurized canister with propellant, which results in a fine, broad mist that fully coats the surface of a pan. *Id*. ¶ 46, 50. The ICBINB Spray does not work like that and is not functional as a cooking spray because it has no propellant, so one spray cannot coat a pan, and because it is mostly water, so it cannot provide a non-stick cooking surface. *Id*. ¶¶ 48, 50. Indeed, in the rare situations that Defendants even suggest the product be used as a cooking spray, their recipes instruct the consumer to use ***5 or 10 sprays*** per serving. *Id.* ¶ 57.

**2.      ICBINB Spray Is a Topping and Butter Substitute.**

The proper reference category for ICBINB Spray is "butter, margarine, oils, and shortening," which has a one tablespoon serving size. ICBINB Spray belongs in the butter reference category because it is a substitute for butter or butter-flavored margarine (including other ICBINB branded products sold in tub form). FAC ¶¶ 45, 47-49 (citing 21 C.F.R. § 101.2). It smells and tastes like butter or butter-flavored margarine, it has the same ingredients, and serves the same function, in that it is primarily intended to top food. *Id*. Defendants intend for consumers to use the product as a butter substitute, using words and imagery to inspire consumers to replace their butter

and margarine with ICBINB Spray. *Id.* ¶¶ 18-19, 23, 31, 55-56.[1] Consumers have responded exactly as Defendants intended: they buy the product because they believe it is a fat and calorie free butter, and they use it like they would use butter. *Id.* ¶¶ 64, 65, 69, 89.[2]

**C.    Unilever Wrongfully Made Zero Calorie Claims Without Complying With The Entire Regulatory Scheme Pertaining To Those Claims.**

Defendants have misled consumers in other ways. In particular, they do not actually disclose what that the product is actually vegetable oil on the front – a fact that is required by the FDA when making claims that the product is calorie free. FAC ¶¶ 72-79. For example, for years, Defendants omitted the statement that the product is 40% vegetable oil, even though all of Defendants' competitors include similar information as to the oil content on the front. FAC ¶ 80 (citing 21 C.F.R. § 102.5(a)). And because they omit material information about the true fat and calorie content, their product is misbranded. *Id.* ¶ 63 (citing 21 C.F.R. § 1.21); *see also* 21 U.S.C. § 343 (food is misbranded "if its labeling is false or misleading in any particular.").

**D.    Unilever and the Upfield Defendants Share Responsibility for the Brand.**

While Unilever had sole control over the ICBINB Spray for many years, since 2015, it began to share that responsibility with the Upfield Defendants. FAC ¶ 10. The precise timeline and roles that each Defendant during the class period are unknown to Plaintiffs, as Defendants have obscured these facts from the public. For example, until at least January 9, 2019, the back labels of the ICBINB Spray identified the company as "Unilever" as depicted below:



---

[1] Defendants have published many recipes calling for its use as butter – more than Defendants have published for use as cooking spray. *Id.* ¶ 57, 64. In these recipes, Defendants suggest consumers use many times their "one spray" serving size. For example, one suggests 30 sprays for a four serving dish, or 8.5 sprays per serving. *Id.* While Defendants have at times offered a second column in their nutrition panel for a 5 spray "topping" serving (which also falls under the rounding down rules), *id.* ¶ 27, this serving size is 35% greater than that, and 850% greater than the 1 spray size that has consistently appeared on the bottle.

[2] If Defendants believed that the ICBINB Spray did not appropriately fit in any of the FDA's serving size categories, they were obligated under the FDA regulations to petition for a new category. FAC ¶ 62. They did not do so. *Id.*

*Id.* ¶ 22. As all three Defendants are based in Englewood Cliffs, *id.* ¶¶ 7-8, and until only recently, the Upfield Defendants also used "Unilever" in their names, *id.,* this identifier provides no information to the public as to which Defendant controls the marketing and advertising.[3] It appears, however, that all Defendants continue to be involved in some way. For example, at different points over the last year, the website www.icantbelieveitsnotbutter.com was operated by Unilever, and then later, by the Upfield Defendants. *Id.* ¶ 18, n.2.

### E.   Plaintiffs All Purchased the Product Believing That It Was Fat and Calorie-Free.

Plaintiffs are California consumers who were looking for calorie-free and fat-free butter substitutes. FAC ¶ 89. Over the years, each purchased many bottles of the ICBINB Spray, based on the misrepresentations about the absence of calories and fat, and unaware that it contained 40% vegetable oil. FAC ¶¶ 90-91, 100-01, 110-11. Before purchasing for the first time, and routinely over the years, Plaintiffs read on the front label and in the nutritional panel that the product was "great for cooking and topping," and contained "0" calories and "0g" of fat. *Id.* ¶¶ 92, 102, 112. They all purchased ICBINB Spray on the basis of these representations and omissions. *Id.* ¶¶ 93, 95-96, 103, 105-106, 113, 115-16. All Plaintiffs used the product for topping food, and none believed that the product was a cooking spray. *Id.* ¶¶ 90-93, 100-103, 110-13.

On October 19, 2018, Plaintiffs filed this putative class action suit in Alameda County, asserting claims arising under the Consumer Legal Remedies Act, Civ. Code, §§ 1750, *et seq.* ("CLRA"); the False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"); the UCL, Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), as well as claims for common law fraud, negligent misrepresentation, and unjust enrichment. On November 29, 2018, Unilever removed to this Court.

## III.   ARGUMENT

To survive a motion to dismiss, a complaint need only plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a

---

[3] As of January 9, 2019, Plaintiffs had no evidence that any of the Defendants had registered "Unilever" as a D/B/A in California. *Id.* ¶ 22.

complaint for plausibility, "the court must presume all factual allegations are true and draw all reasonable inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1136 (N.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678).

### A. Plaintiffs May Pursue Claims Against Unilever For Deceptively Advertising the Sprays.

Unilever contests standing under Rule 12(b)(1) and sufficiency of the allegations under Rule 12(b)(6). Both arguments fail.

### 1. Plaintiffs Have Standing to Sue Unilever.

To plead standing, a plaintiff must allege (1) an injury-in-fact; (2) that is traceable to the defendant; and (3) is capable of being redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In a Rule 12(b)(1) motion, a district court may review evidence beyond the complaint to evaluate these threshold requirements. *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Nevertheless, a district court may ***only*** grant such a motion "where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). The district court must assume the truth of the allegations in the complaint "unless controverted by *undisputed* facts in the record." *Id.* (emphasis added).

Plaintiffs have standing to sue all Defendants, as they allege they paid a price premium as a result of Defendants' false advertising, and that the Defendants share responsibility for that misconduct.[4] Unilever asserts that these injuries are not traceable to Unilever and are not capable of being redressed by Unilever because it purportedly "transferred the brand over three years ago." Mot. at 6. In support, Unilever introduces a secret "Contribution Agreement," filed under seal, which it claims conclusively establishes that only the Upfield Defendants are liable. Not so.

A "jurisdictional finding of genuinely disputed facts is *inappropriate* when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Sun Valley v. Ernst*

---

[4] Unilever claims Plaintiffs "concede that Unilever no longer owns or controls the ICBINB brand," Mot. at 6, but in fact, Plaintiffs allege that Unilever used to exclusively control the brand, but now, the responsibilities are "shared." FAC ¶ 10.

*Enterprises, Inc.,* 711 F.2d 138, 139 (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)) (emphasis added). Here, the factual questions of who engaged in the false advertising and who should be liable for it are indisputably intertwined with the merits of Plaintiffs' claims. Accordingly, courts routinely deny Rule 12(b)(1) motions in which defendants claim that a private contract with another entity exonerates them. *See, e.g., Machlan v. Procter & Gamble*, 77 F. Supp. 3d 954, 963-64 (2015) ("This is indisputably an issue that goes directly to P&G's liability, and as such, it is <u>not</u> one that the Court can resolve on a 12(b)(1) motion.") (emphasis in original); *Vasic v. Patent Health, L.L.C.*, 2013 U.S. Dist. LEXIS 125633, at *8 (S.D. Cal. Sep. 3, 2013) (denying Rule 12 motion, as the evidence "does nothing more than create a factual dispute as to whether Arthur Middleton does in fact manufacture, market, distribute, or sell the Trigosamine Products as alleged in the FAC").[5] Further, several facts indicate that Unilever was involved in the marketing and distribution of the product through 2019; its logo appeared on packages as recently as January 9, 2019 and it controlled the brand's website until recently. *Id.* ¶¶ 18, 22. These facts give rise to a variety of possibilities, e.g., the brand could have been transferred back, Unilever still could have control in the form of a separate licensing agreement, addenda could have been signed, or informal arrangements may have persisted. *Cf. Machlan,* 77 F. Supp. 3d at 964 (noting that even if the contracts established that one defendant did not have responsibility for the product, "that would hardly establish as a factual matter that those terms were complied with"). These factual disputes cannot be resolved under Rule 12(b)(1).[6]

### 2.    Plaintiffs Plausibly Pled that Unilever is Liable.

Unilever next argues that Plaintiffs have not plausibly pled that it is liable, because the Contribution Agreement establishes that it no longer controls the brand. But the Court may not

[5] Unilever may point to *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007), in which the Court resolved on a 12(b)(1) motion the question of whether Wal-mart Stores, Inc. was liable for false advertising appearing on a website run by Walmart.com USA, Inc. That case is inapposite because *no facts were in dispute*. *Cattie* recognized that, where a defendant claimed it was not properly named or responsible for the advertising, the "jurisdictional finding of *disputed* facts under Rule 12(b)(1) is inappropriate." *Id.* at 944. (emphasis added).

[6] Unilever has never sought to rely on the Contribution Agreement to evade responsibility in *Pardini v. Unilever USA, Inc.*, Case No. 13-cv-1675, which also challenges the labeling of the ICBINB Spray, which suggests the relationship between it and the Upfield Defendants is more complicated than Unilever has stated here.

consider the Contribution Agreement on a Rule 12(b)(6) motion. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (warning that outside evidence on a Rule 12(b)(6) motion may permit defendants "to insert their own version of events into the complaint to defeat otherwise cognizable claims").[7] Moreover, Plaintiffs have pled that Unilever's name, location, and logo appeared on all the packaging until at least January 2019, and that Unilever controlled the website until at least July 2018. FAC ¶¶ 22, 18 at n.2. These facts are more than enough to establish a plausible case that Unilever shares control over the brand. *Cf. Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).").[8]

All Defendants similarly assert that Plaintiffs' claims are not actionable, because they have not differentiated between Defendants. Mot. at 9. But Plaintiffs need only plead with specificity "those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). *See also United States ex rel. Vatan v. QTC Med. Servs.*, 721 F. App'x 662, 663 (9th Cir. 2018) (same). *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) (explaining that while grouping defendants together is disfavored, "the rule may be relaxed as to matters within the opposing party's knowledge"). Here, Plaintiffs have differentiated among Defendants to the extent they have access to that information. Plaintiffs cannot discern which entity or entities directed the representations after 2015, since the packaging does not identify an actual corporate entity, but merely the Unilever logo. FAC ¶ 20. Consistent with *Moore*, Plaintiffs have identified the various misrepresentations,

---

[7] Defendants state that the "doctrine of incorporation" permits the Court to consider the Contribution Agreement in a Rule 12(b)(6) motion. But that doctrine applies where a plaintiff "refers extensively to the document" in the complaint. *Khoja*, 899 F.3d at 1002 (internal quotations omitted). That is not the case here. In any event, the doctrine is not to be used where "the document merely creates a defense to the well-pled allegations in the complaint." *Id.*

[8] While Unilever asserts that courts regularly grant Rule 12(b)(6) motions where the plaintiff named an improper defendant, those cases are inapposite. In *Moses v. Innoprise Software*, 2014 U.S. Dist. LEXIS 22407 (N.D. Cal. Feb. 21, 2014), the defendant dismissed was the successor entity, not the original entity, and that was because the plaintiff had not alleged any facts giving rise to liability of the successor company. *Id.* at * 10-11. In *Cummings v. Harris*, 2015 U.S. Dist. LEXIS 99197 (N.D. Cal. July 28, 2015), the plaintiff named the wrong government official; as the proper defendant was a matter of public record, the court could make such a finding. *Id.* at *7.

and stated that Unilever had sole responsibility under at least April 22, 2015, after which point it was shared with the Upfield Defendants. FAC ¶ 10.[9]

**B.    Plaintiffs' Claims Seek to Impose Requirements Identical to the FDA's and Thus Are Not Preempted.**

Plaintiffs allege that Defendants misled reasonable consumers about the fat and calorie-content of their product, primarily by using improperly small serving sizes and by failing to disclose that ICBINB Spray consists of 40% vegetable oil in violation of federal regulations. None of these claims are preempted.

**1.    Defendants Must Overcome The Strong Presumption Against Preemption.**

State consumer protection laws, which are within the states' historic police powers, are subject to a strong presumption against preemption, so Congress' intent to preempt state law must be "clear and manifest." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *California v. ARC America Corp.*, 490 U.S. 93, 101 (1989). In addition, because preemption is an affirmative defense, the party asserting it bears the burden of proof. *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251, n. 2 (2011); *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603, n.8 (9th Cir. 2018). Only when the complaint "admits all the ingredients of an impenetrable defense" may the Court conclude that the claims have been preempted. *Durnford*, 907 F.3d at 603, n.8.

**2.    The Food, Drug And Cosmetics Act Does Not Expressly Preempt The Laws At Issue In This Case.**

The Food Drug and Cosmetic Act ("FDCA") gives the Food and Drug Administration ("FDA") the responsibility to protect the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2)(A), and the FDA has promulgated regulations pursuant to this authority. *See, e.g.*, 21 C.F.R. § 101.1 *et. seq.* The FDCA contains an express preemption provision, which provides that it preempts any state law that is "not identical to" what the FDA requires. 21 U.S.C. § 343-1(a)(2)-(3). The phrase "not identical

---

[9] Defendants' cases are again inapposite, as none involve situations where the facts required to differentiate between defendants was in the exclusive control of the corporate defendants. *See Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (civil rights case against government officials); *Corazon v. Aurora Loan Servs., Ltd. Liab. Co.*, 2011 U.S. Dist. LEXIS 52712, at *11-13 (N.D. Cal. May 5, 2011) (failure to distinguish between the originator of a loan and servicer of a loan).

to" means that "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that are "not imposed by or contained in the applicable provision [or regulation]" or "[d]iffer from those specifically imposed by or contained in the applicable provision [or regulation]." 21 C.F.R. § 100.1(c)(4).

Here, the express preemption provision of 21 U.S.C. § 343-1(a)(2)-(3) does not apply, because Plaintiffs have not sued under any state laws that "directly or indirectly establish ... or continue.... any requirement for the labeling of food of the type required by [specified sections of the FDCA] that [are] not identical to the requirement of such sections." Rather, plaintiff has pled claims only under general state laws pertaining to advertising and sale of all good and services, i.e., the UCL, CLRA, and FAL, as well as for common law fraud, deceit and/or misrepresentation. None of these laws are particular to food labeling, and the FDCA was *not* intended to preempt such general state laws regarding labeling and advertising, even if such laws applied to food among other products. *See, e.g., Becerra v. Coca-Cola Co.,* 2018 U.S. Dist. LEXIS 31870, at *4 (N.D. Cal. Feb. 27, 2018) ("states are free to regulate where, as here, California statutes impose requirements identical to those of Section 343(a)") (citing *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1091 (2008) ("Congress made clear that the preemptive scope of section 343-1 was to sweep no further than the plain language of the statute itself."). Moreover, all these laws prohibit false and misleading advertising in the same way as does the FDCA itself. *See* 21 U.S.C. § 343 (prohibiting labeling that is "false or misleading in any particular" and advertising that is "false or misleading in a material respect").

### 3.  Plaintiffs' Serving Size Claims Are Not Preempted.

Plaintiffs' legal claims about serving sizes are identical—and predicated on—FDA regulations. The only dispute between the parties is over how to interpret the regulations. The Complaint plausibly alleges that Defendants do not comply with the regulations because ICBINB Spray is a butter-flavored topping used as a butter or margarine substitute that should have a serving size of 1 tablespoon. This is all that is required at this stage. *Cf. Durnford,* 907 F.3d at 603, n.8; *Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 78607, at *22 (S.D. Cal. May 9, 2018) (stating that the court must assume plaintiffs' allegations to be true when assessing argument

that claims are preempted by the FDCA); *Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 575 (N.D. Cal. 2013) (same).

Unilever does nothing to meet its burden of proving preemption, other than invoking Judge Conti's prior orders in *Pardini*. But Judge Conti misstated the law, as subsequent decisions of two other judges in this District and of the Ninth Circuit make clear.[10]

### a.    Overview Of The Serving Size Regulatory Scheme

The FDA has promulgated regulations that require food labels to declare the amount of fat and calories per serving. *See* 21 C.F.R. §101.9(c). Fat and calorie claims both require disclosures based on properly calculated serving sizes. In particular, a product may only be labeled 0-fat if it contains less than .5 g of fat per serving. 21 C.F.R §101.62(b)(i). It may only be labeled 0-calories if it contains less than 5 calories per serving. 21 C.F.R §101.60(b)(i). This regulatory scheme **requires** manufacturers to use a serving size that represents **both** the amount customarily consumed and the product's major intended use. *See generally* 21 C.F.R. §§ 101.9, 101.12(a)(7). To select the appropriate serving size, manufacturers must match the food to one of the FDA's many product categories, set forth in 21 C.F.R. § 101.12, Table 2 ("Serving Size Table"), and use the appropriate serving size, i.e. the Reference Amount Customarily Consumed ("RACC"), for that food. *Id.* If a manufacturer believes that an appropriate reference category for its food product does not exist, the manufacturer **must contact the FDA with evidence to support its serving size to have its serving size approved**. 21 C.F.R. §101.12(h).

### b.    Defendants Have Not Carried Their Burden to Show That Plaintiffs' Plausible Allegations As To The Misclassification Of The ICBINB Spray Are Preempted.

To paraphrase Judge Tigar, the question before this Court is whether the ICBINB Spray is "more like Pam® or liquid butter." *Allen I*, 2013 U.S. Dist. 125607, *1. Plaintiff's complaint alleges many facts that, if proven, will demonstrate that the product is more like butter than Pam®,

---

[10] In *Pardini*, Judge Conti issued two opinions on the question of preemption. *See Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013) ("*Pardini I*"); *Pardini v. Unilever United States, Inc.*, 2014 U.S. Dist. LEXIS 7900 (N.D. Cal. Jan. 22, 2014) ("*Pardini II*") (collectively "*Pardini* Orders"). In *Allen*, Judge Tigar issued one opinion, *Allen v. ConAgra Foods, Inc.*, 2013 U.S. Dist. LEXIS 125607 (N.D. Cal. Sep. 2, 2013) ("*Allen I*"), and Judge Orrick issued another, *Allen v. ConAgra Foods, Inc.*, 2018 U.S. Dist. LEXIS 208196 (N.D. Cal. Dec. 10, 2018) ("*Allen II*") (collectively "*Allen* Orders").

which in turn will mean that Defendants' serving size was wrong. Because Defendants cannot show that the dispute over whether the product is like Pam or like liquid butter, once resolved, would require them to "depart from what is already included within the federal regulations, " they cannot establish preemption. *See Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178, at *31, 34 (N.D. Cal. Oct. 2, 2013) (internal quotations omitted); *see also Durnford,* 907 F.3d at 603, n.8 (explaining that while the plaintiffs have the burden of proving their claims at trial, defendants have the burden of showing those claims are preempted).[11]

Judge Conti's orders do not dictate the result here, because they not only do not examine the 19 pages of additional facts pled in *this* complaint, but their entire legal framework is incorrect. Indeed, the Ninth Circuit has recently made clear that claims falling under 21 C.F.R. § 101.9 are *not* preempted. *See Lilly v. ConAgra Foods, Inc.,* 743 F.3d 662, 665-666 (9th Cir. 2014) (reversing district court where plaintiff had alleged plausible facts that the defendant's sodium content claims were inconsistent with FDA regulations). The preemption defense fails for all the following reasons.

> **(1)    Defendants Have Not Established That There Is No Plausible Basis For Plaintiffs' Claims That The ICBINB Spray Is Not A Cooking Spray.**

Central to Plaintiffs' allegations that the ICBINB Spray is not a cooking spray is the way the product functions when used in accordance with the recommended serving size. Cooking sprays require propellant, because that is the ***only*** way a 0.25 gram serving size can be dispensed to be functional for cooking, i.e., to permit a consumer to coat a pan. FAC ¶ 51. The ICBINB Spray cannot coat a pan for cooking if a consumer uses just one spray. *Id.*[12] Further, cooking sprays are 100% oil (other than trace amounts of propellant), while the ICBINB Spray is roughly 60 percent water, and thus, a 0.2 gram spray contains just 0.08 grams of oil, *id.* ¶¶ 34, 50; once the water evaporates, there is far too little oil to be useful in cooking.

---

[11] It is not clear from the *Pardini* Orders whether Judge Conti considered that, on a Rule 12(b)(6) motion, (i) Plaintiffs' allegations must be accepted as true, and (ii) it is Defendants' burden to show that there is no set of facts under which the claims are not preempted.

[12] If this Court finds further amendments necessary, Plaintiffs will plead that one pump, i.e., one 0.2 gram serving, dispenses approximately a quarter-sized circle of viscous liquid that does not noticeably increase in diameter when heated.

Defendants well know that the ICBINB Spray is not a cooking spray that can be dispensed in one spray because when they recommend it for cooking, they instruct consumers to spray a "no-stick skillet" with **10 sprays to prepare a single serving dish**. *Id.* ¶ 57*; Balassone Decl., Ex. F.[13] The fact that Defendants need to instruct consumers to use ten times the supposed serving size demonstrates that **the ICBINB Spray is non-functional when used as classified**.

Defendants do not engage with these facts, but make only conclusory references to Judge Conti's Orders. Judge Conti said nothing about the water content of ICBINB spray or how that affected its use, nor about whether one spray was sufficient to cook anything. His orders are also infected by his misunderstanding of preemption law, as Judge Tigar's opinion makes clear by contrast. *See Allen I*, 2013 U.S. Dist. LEXIS 125607, at *21 ("Plaintiff plausibly alleges that the reason the FDA's label statement guidance does not apply is not because Parkay uses a pump, but Parkay is labeled and used as a topping and butter-substitute — not a cooking spray.").

Defendants next assert that because the ICBINB Spray is "labeled as a spray and functions as a spray, *it is a spray*." Mot. at 14. This argument is contradicted by the allegations of the complaint, which says that although the product is in a spray *bottle,* it does *not* function as a cooking spray. The argument also was rightly rejected by Judge Tigar, who explained that while the product does have a spray top, it is also a liquid butter-like product, and thus there is a plausible dispute as to which category the product falls. *Allen I,* 2013 U.S. Dist. LEXIS 125607 *18.[14] Judge Conti's conclusion to the contrary is also inconsistent with the Ninth Circuit's subsequent decision in *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015), which rejected the idea that when the FDA does not define a word, manufacturers are free to define it as they wish. *Id*. at 758 (explaining that preempting claims on this basis would permit manufacturers to "make any claim –

---

[13] In fact, while Defendants have published many recipes utilizing the ICBINB Spray, **not a single one recommends just one spray per serving**. In many other recipes, Defendants tell consumers to use a cooking spray, but do not even recommend the ICBINB Spray for that use. *Id.*

[14] Defendants note that the FDA recently updated its guidance to define "Spray types" to include "[a]ll types of cooking sprays" to argue that the FDA did not intend to limit the category to products like PAM. But it is reasonable to conclude that the FDA intended to limit the category to foods that are functional and can be used as recommended at the recommended serving size. Moreover, as Judge Orrick noted, "[t]he butter, margarine, oil, shortening category still includes 'liquid' as a possible form of the butter and margarine spread." *Allen II*, 2018 U.S. Dist. LEXIS 208196, at *28.

wild, untruthful, or otherwise – about a product whose contents are not addressed by a specific

regulation"). Defendants do not get to argue that their interpretation of the word "spray" is

untouchable. *Cf. id.; Kosta v. Del Monte Corp.*, 2013 U.S. Dist. LEXIS 69319, at *21-22 (N.D.

Cal. May 15, 2013) ("While Del Monte may disagree with Plaintiffs as to both the meaning of the

FDA requirements at issue here and whether its products conform to those requirements, that

disagreement does not mean that Plaintiffs are trying to impose additional requirements beyond the

FDA's.").

   While Defendants dispute Plaintiffs' factual allegations about how the product functions

and is used, this is not a preemption argument. *See, e.g., Werdebaugh*, 2013 U.S. Dist. LEXIS

144178, at *34; *Allen I*, 2013 U.S. Dist. LEXIS 125607, at *20 ("ConAgra's claim to the contrary

does not mean the claim is preempted, but only that there is a live claim between the parties.").

   **(2)    Defendants Have Not Established That The Classification of the ICBINB Spray as a Butter Would Impose Requirements Different Requirements Than The FDA Has Set.**

   Plaintiffs also adequately allege that the ICBINB Spray is more like liquid butter, whose

major intended use is as a topping, so it was required to be classified under the default "Fat and

Oil" category, for which the appropriate serving size is one tablespoon. None of Defendants'

arguments establish why, if proven at trial, Plaintiffs' claims would hold them to standards

different than what the FDA has set. Instead, Defendants merely parrot Judge Conti's prior orders

without analysis.

   Plaintiffs agree with at least one statement of Judge Conti's: that "[m]anufacturers must use

the defaulted serving size of one tablespoon for any 'Fat and Oil' <u>unless the product fits within a</u>

<u>more specific subcategory</u>." *Pardini I*, 2014 U.S. Dist. LEXIS 7900, at *14 (emphasis in original).

*See also* Mot. at 18 (urging this court to follow this rule).[15] Plaintiffs have alleged facts that

plausibly establish that the product does *not* fit into a more specific subcategory, *see* § III.B.3.b.1,

---

[15] Unilever misleadingly suggests that the FDA has already determined the customary consumption for ICBINB spray based on national food consumption data. Mot. at 12. But the FDA has never evaluated ICBINB Spray—rather, the FDA has only outlined serving size *categories*, and which category a product belongs in is dictated by the product's major intended use and how it is customarily consumed. 21 CFR §101.9 and §101.12. Because the product cannot actually function as a cooking spray when dispensed in single spray serving sizes, consumers simply are never using .2 grams at a time, as Defendants' own recipes reveal.

*supra*, which should end the debate at this stage.

Plaintiffs also have set forth plausible allegations, that if proven, would show that Defendants should have used the FDA's designated serving size for fat, oil, butter, and butter substitutes. Consistent with the regulations setting forth the definition of a a substitute product, Plaintiffs have alleged that the ICBINB Spray is organoleptically, physically, and functionally the same as butter. FAC ¶ 49 (citing 21 C.F.R. §101.13(d) (requiring that substitute food products use the same serving size "as the food for which it is offered as a substitute")). While Defendants argue that the product is organoleptically, physically, and functionally more akin to Pam, that again "does not mean the claim is preempted, but only that there is a live claim between the parties." *Allen I,* 2013 U.S. Dist. LEXIS 125607, at *20.[16] Plaintiffs additionally have pled facts that plausibly show that the major intended use of the product is as a butter substitute—to provide the creaminess and flavor of butter. These include not only the name "I Can't Believe It's Not Butter," which "suggests to the consumer that the product is intended to be a diet version or substitute for butter and margarine," FAC ¶ 19, but also long term marketing efforts to push the ICBINB Spray as a butter substitute. *See also id.* ¶¶ 18, 20, 23, 31, 33, 49, 52, 56, 69, 93, 103, 113 (describing). Mot. at 12; see 21 C.F.R. § 101.12(a)(7) (requiring selection of category based on "major intended use"). Defendants' only response—which has no legal support—is that because the package states "great for cooking and topping," they are permitted to select "cooking" as the major intended use of the product and that any effort to challenge that is preempted. That is not how the law works. *Cf. Allen I,* 2013 U.S. Dist. LEXIS 125607, *20; *Kosta,* 2013 U.S. Dist. LEXIS 69319, at *21-22; *Werdebaugh*, 2013 U.S. Dist. LEXIS 144178, at *34. At a minimum, there is a factual question as which of the two uses claimed by Defendants--"cooking and topping"—is the *major* intended use.[17]

---

[16] Notably, section 101.13(d) did not appear in the *Pardini* complaints, and is not discussed in the *Pardini* Orders.

[17] This dispute is plausible because Defendants require that consumers use 10 sprays per serving to use the ICBINB Spray as a spray, and thus, the ICBINB Spray is only "great for cooking" if the consumers use it like butter, i.e. in quantities far in excess of the recommended 0.2 gram serving size, *see* § III.B.3.b.1, *supra*.

**4.    Even If Defendants Are Using The Proper Serving Size Classification, Defendants' Labeling Still Violates FDA Regulations.**

Even if Plaintiffs do not succeed on their serving size claims, they have additional claims based on the misleading statements about fat and calories and the general FDA misbranding regulation, 21 C.F.R. § 1.21(a), which Defendants never address. *See* FAC ¶ 63, 180 (discussing the regulation). As the Ninth Circuit held earlier this year, this catch-all regulation can support a legal claim even if the manufacturer complies with other more specific regulations. *See Dachauer v. NBTY, Inc.*, 913 F.3d 844, 849 (9th Cir. 2019) (finding no preemption where label otherwise complied with the FDCA but plaintiffs alleged that such compliance resulted in consumers being uninformed about a health risk). *See also Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1097 (N.D. Cal. 2017) (applying regulation; allowing omissions claim in food labeling case to proceed). Plaintiffs allege numerous facts to support the section 1.21 claim, including the omitted material information about fat and calories that was necessary to make its statements non-misleading, particularly in light of the target audience for the product of fat-and calorie-conscious consumers. FAC ¶ 1, 17, 18, 63, 180. [18]

**5.    Plaintiffs' Statement of Identity Claims Are Not Preempted.**

Plaintiffs have yet another claim that is not preempted: that Defendants failed to provide the required "statement of identity" informing consumers that the product is 40% vegetable oil. [19] FAC ¶¶ 73-83 (citing 21 C.F.R. § 102.5). The regulation requires Defendants use a name that is "uniform among all identical or similar products," 21 C.F.R. § 102.5(a), and Plaintiffs make numerous factual allegations that similar products are labeled "__% vegetable oil spread" and that Defendants' term "buttery spray" does not satisfy the requirement for a uniform, common name. FAC ¶¶79-81. Defendants dispute the allegations, but that again does not mean there is

---

[18] *Dachauer* was decided on January 10, 2019, the same day Plaintiffs filed their amended complaint, and little district court guidance on this regulation preceded that opinion. If this Court finds that Plaintiffs' UCL unlawful claims under 21 C.F.R. § 1.21 are not adequately pled, Plaintiffs request leave to amend to add additional facts, such as information as to the particular health concerns, such as diabetes, high blood pressure, and heart problems, that lead people to require reduced fat and calorie foods.

[19] Defendant's failure to inform consumers that ICBINB Spray is actually 40% vegetable oil also perpetuated the belief among consumers that ICBINB spray contained a negligible amount of fat and calories on a percentage basis. *Id.* ¶82.

preemption, only a dispute as to what the statement of identity for this product should be.[20]

Similarly, Defendants' assertion that 102.5 does not apply when consumers "generally understand the common or usual name of the food to include an ingredient" is no basis for preemption, because it at a minimum requires a factual determination about whether consumers "generally understand" this product to be. *See* 21 CFR § 102.5(b) (requiring statement of "the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance"); *id.* § 102.5(c) ("requiring statement of the presence or absence of any characterizing ingredient(s) or component(s)…when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance …and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food"). Defendants argue that they need only comply with either 102.5(b) or 102.5(c), but there is no legal support for the argument, and the text of the regulations is to the contrary: the first applies whenever there is a bearing on price or acceptance; the second applies if there is an additional showing that consumers might not even be aware of the presence of the ingredients. Defendants also argue that Plaintiffs cannot prove that consumers are misled and that the omissions are material to price and consumer acceptance, but there is no doubt that Plaintiffs have pled these facts. FAC ¶¶ 82, 97, 107, 117. Finally, Defendants argue that the inclusion of soybean oil in the ingredients label on the back cures the violation, but that again is inconsistent with the regulations, which expressly dictate that the disclosures be present on the front label in specified type sizes. *Id.* ¶¶75-77; *see* 21 C.F.R. § 102.5(c).[21]

### C.   Plaintiffs Have Plausibly Alleged Classwide Reliance and Deception.

To state a claim under California's UCL, FAL, and CLRA, a plaintiff need only plead that

---

[20] Plaintiffs allege that the common or usual name for ICBINB Spray is "40% vegetable oil spread," as that is what is used by similar products. *Id.* ¶ 81 (Parkay Spray labeled "44% vegetable oil"; noting that butter substitutes and cooking sprays also use the percentage of oil as a statement of identity). And that is the statement of identity that Defendants have placed on their label since mid-2018. FAC ¶ 79.

[21] While the Plaintiffs reviewed the backs of the packages, there also is no evidence that they read that the product contained soybean oil, let alone were made aware that that the product contained an incredibly high proportion of oil.

---

the defendant's actions, statements, and omissions were likely to deceive a reasonable consumer. *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (holding that plaintiff need only "show that members of the public are likely to be deceived"); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 679 (2006) (conduct that is "likely to mislead a reasonable consumer" violates the CLRA); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (same, common law fraud and negligence). The question of whether an advertisement or label is deceptive to a reasonable consumer is generally not one that can be resolved at the pleading stage. *Williams,* 552 F.3d 934, 939 (noting that it is a "rare situation" when a Rule 12(b)(6) dismissal would be appropriate).

The FAC alleges facts more than sufficient to establish that consumers were likely to be misled. Consumer were given false information that there were zero calories and zero grams of fat serving. They were given no way to know what the actual amount of fat and calories would be if they used multiple sprays—i.e., used it as the buttery topping Defendants intended. To the contrary, it would be reasonable to conclude that any number of sprays had zero calories and zero fat, because, as a matter of arithmetic, any number of servings times zero is still zero.[22]

Defendants contend that it would be implausible for a person to use one tablespoon (or 40 sprays) of the product, but that again is a factual issue not resolvable on motion, and in any event is besides the point. The regulations require Defendants to use the one tablespoon reference amount, unless they petition the FDA to create another category, 21 C.F.R. § 101.12(f), which they failed to do. FAC ¶ 62. The FAC does not allege that "consumers who use more than one serving should [] get to dictate the serving size," Mot. at 18, but that the serving size must be consistent with FDA rules. Mot. at 19. *See Allen II,* 2018 U.S. Dist. LEXIS 208196, at *28 (accepting allegations that a spray butter is a butter not a spray as sufficiently pled); *Allen I,* 2013 U.S. Dist. LEXIS 125607, at

---

[22] *Rosen v. Unilever United States, Inc.*, 2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010), Mot. at p. 19, is distinguishable. There, the court held that the statement "made from a blend of nutritious oils" was not misleading because reasonable consumers would not assume that "the whole is nothing more than the sum of its parts." *Id*. at *15-16. But it does not follow that consumers are acting unreasonably when believe that if they eat two 100 calorie cookies, they will have eaten 200 calories.

*35 (same).[23]

Defendants' argument that viewing the back label would have cured all misunderstanding also fails. It assumes that consumers not only know what ingredients contain fat and calories and in what amounts, but can also divine the relative proportions of those fat- and calorie-containing ingredients to other ingredients, and thus compute the amount of fat and calories they are consuming. Were any of these things true, the FDA would not require manufacturers to expressly disclose the amount of fat and calories based on standard reference serving sizes.[24] Furthermore, the FAC does not admit that Plaintiffs even reviewed the ingredient list in detail or any disclaimers, but pleads only that the Plaintiffs reviewed the back and the ingredients "generally."[25] This is simply not a case where it is "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams,* 552 F.3d at 939.

### D.   Plaintiffs' Omissions Claims Are Adequately Pled.

Defendants erroneously argue that Plaintiffs have not stated a claim for the omission of the required information under 21 C.F.R. § 102.5. Defendants are wrong.

Under California law, a duty to disclose arises "when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff" or "when the defendant actively conceals a material fact from the plaintiff." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (internal quotations omitted). Both of these situations are met here. Only

[23] Judge Conti held that it was implausible that "consumers customarily pump a container of ICBINBS forty times per serving," *Pardini I,* 961 F.Supp. 2d at 1056, his opinion does not explain why that is so, and provides no explanation use of "1 spray" is any more plausible.

[24] Even if this Court were to accept Defendants' inference that Plaintiffs read the ingredient list with great care, it is plausible that consumers do not know which raw food substances have fat and calories, and in what quantities. And there are many reasons that could lead consumers to believe that a product containing oil and buttermilk does not contain fat or calories, first and foremost being that *that is what the label actually says.* And because products such fat free half and half taste creamy and contains dairy, and diet cola tastes sweet and contain sugars, consumers reasonably believe that food science may make it possible to remove the fat and calories from ingredients. These allegations and more can be added to the complaint if this Court requires.

[25] Defendants cite *Maxwell v. Unilever, Inc.*, 2018 U.S. Dist. LEXIS 54222 (N.D. Cal. Mar. 29, 2018), but that case does not apply. There, the plaintiff testified that she had read the ingredient list, including specific ingredients, such as "citric acid" and concluded that the ingredient was "natural." *Id.* at *11-12. She then sued stating that the defendants were required to warn her that these ingredients were artificial. The court dismissed for many reasons, including the fact that reasonable consumers should know that Pepsi is "highly artificial and processed."

Defendants knew that the product was actually 40% vegetable oil; and the regulation required them to say so, which establishes that the information is material. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination"). All three Plaintiffs pled reliance on that omission. FAC ¶¶ 97, 107, 117.[26]

Further, as Defendant's admit in their brief, "[a]n omission is actionable if it is 'contrary to a representation actually made by the defendant' or 'of a fact that the defendant was obliged to disclose.'" Mot. at 20 (citing *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1085 (N.D. Cal. 2017)). Defendants' statement that the product contains "0 calories" is an affirmative misrepresentation, requiring Defendants to disclose that in fact the product provides numerous calories and is largely fat (i.e., 40% vegetable oil).

### E.   Plaintiffs' Fraud Claims Satisfy Rule 9(b).

Plaintiffs have pled "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Specifically, Plaintiffs adequately pled "who" (Defendants); "what" (they purchased the ICBINB Spray) and "when" (regularly over many months and years. FAC ¶¶ 91, 101, 111. They also plead the "where," i.e. that they read the representations on the label that the products were fat and calorie free. Id. ¶¶ 92, 102, 112. And they plead the "how," i.e. that they relied on those misleading statements and omissions. *Id*. ¶¶ 91-93, 101-03, 111-113. Numerous courts have found that similar allegations in product labeling cases to be sufficient. *See, e.g., Ham v. Hain Celestial Grp.*, 70 F. Supp. 3d 1188, 1192 (N.D. Cal. 2014); *In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090, 1099 (C.D. Cal. 2012) (collecting cases); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011).

Defendants claim that to satisfy Rule 9(b), Plaintiffs must identify pictures of every version of the label that they purchased, state which size bottle(s) they purchased, and state how many

---

[26] Defendants cite outdated law on the question of what is required to show a duty to disclose. Last year, the Ninth Circuit reconciled differences between *Wilson v. Hewlett Packard Co,*, 668 F.3d 1136 (9th Cir. 2012), on which Defendants rely, and more recent authority from California state courts, and held that those cases "show that *Wilson*'s safety hazard pleading requirement is not necessary in *all* omission cases." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018)

bottles they purchased. But as there is no allegation of any meaningful difference in the representations appearing on the packages, Defendants wildly overstate what is required at this juncture. *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 U.S. Dist. LEXIS 138897, at *11 (N.D. Cal. Sep. 25, 2013) (holding that where the plaintiffs had identified specific representations, identification of the precise labels on which those representations appear is not required to satisfy Rule 9(b); *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d at 1100 (finding "some information about the frequency with which they viewed the allegedly misleading statements" to be sufficient and noting that more specificity was "not necessary or realistic").[27]

Finally, Defendants assert that Plaintiffs have not pled how the statements are misleading, because Defendants insist that Plaintiffs "general[]" review of the package, FAC ¶¶ 92, 102, 112, means that this Court infer that each Plaintiff read and understood every piece of fine print appearing on their packaging and from that, insist upon hyper-precise answers as to how Defendants' sophisticated evasion of complicated regulations tricked each one. The simple truth, however, is that Plaintiffs are lay consumers who do not possess specialized knowledge of nutrition or food science. FAC ¶ 120. They believed that the products were fat and calorie free, because that is what the labels said. They did not know the product contained 40% vegetable oil, because that did not appear on the package. And they purchased the product on the belief that they could use it for topping food without adding fat and calories, because that is a reasonable inference for consumers to draw when faced with a package as misleading as Defendants'. FAC ¶¶ 93-100, 103-10, 113-20.[28] Nothing more is required. *Cf. Starr*, 652 F.3d at 1216 (explaining that if each side puts forth plausible inferences on a Rule 12(b)(6) motion, the complaint survives).

[27] In a footnote, Defendants trot out the tired argument that Plaintiffs do not have "standing" to sue for products they never purchased, e.g., they cannot represent purchasers who bought versions with immaterial label differences. The fat free, calorie free representations are the same, and any minor variances in the labels are issues for class certification. *See, e.g., Clancy v. The Bromley Tea Co.*, 2013 WL 4081632, *6 (N.D. Cal. Aug. 9, 2013) (internal citations omitted) (stating that claims need only be "reasonably co-extensive; collecting cases in accord). While Defendants also state that Plaintiffs have not provided enough detail to conclude the packages are similar, the complaint is replete with allegations that Defendants' representations were consistent throughout the class period. *See* FAC ¶¶ 19, 21-22, 24, 25, 26, 30, 58, 79.

[28] If necessary, Plaintiffs can amend to add claims to make clear that even if they did review certain statements on the package, they did not understand anything on the label, such as ingredients or statements about there being an insignificant amount of fat, to mean that the product has __ fat per one tablespoon serving.

**F.     Allegations Relating to Representations on Defendants' Website Are Proper.**

Defendants make the unintelligible argument that Plaintiffs "lack standing to rely" on the statements on the ICBINB Website and "to pursue claims based on those allegations." Mot. at 22-23. Defendants appear to misunderstand the purpose of the allegations about the website. Plaintiffs are have not pled that they relied on the website, but the representations on the website are still relevant to show *Defendants' state of mind*: that they intended to mislead, and further that their characterization of the product as a cooking spray with a serving size of 1-spray is disingenuous, because they admit that 10 sprays at a minimum are needed for a single serving. *See* § III.B.3.b.1 *supra*. Thus, the allegations are are relevant. *See Duran v. Hampton Creek*, 2016 U.S. Dist. LEXIS 41650, at *14-15 (N.D. Cal. Mar. 28, 2016) (rejecting argument attacking allegations pertaining to a website that the plaintiffs did not see, explaining that the allegations "bolsters that *scienter* evidence . . . to show that [the defendant] knew that its representations were false").

**G.     Plaintiffs Have Standing to Seek Injunctive Relief.**

In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the Ninth Circuit held that the threat of future harm required to establish Article III standing to obtain an injunction "may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." 889 F.3d at 969-70. Plaintiffs have satisfied that standard. They allege that they "continue to desire to purchase fat-free, calorie-free butter substitutes from Defendants" and they regularly visit stores where the ICBINB Spray is sold, but have no way of knowing whether the representations are true. FAC ¶ 121. Indeed, recent decisions within this district have upheld the adequacy of allegations identical to those here. *See, e.g., Allen v. Conagra*, Dkt. 231, at 21-22 ("Plaintiffs' allegations closely mirror those in *Davidson*, and they stand apart from the plaintiffs in *Fernandez [v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018)]*, who no longer wished to purchase the Defendant's products").

Defendants cite the non-precedential decision in *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018), to suggest that Plaintiffs must plead a date certain by which they desire to purchase product. But the *Lanovaz* panel affirmed *summary judgment* dismissing an injunctive

relief claim where the plaintiff had testified in deposition that they would "never" purchase the product at issue again. It provides no guidance on what is required at the pleading stage. [29]

Furthermore, while *Davidson* held that a plaintiff could obtain standing by pleading she intend to purchase that specific product again, it did not state that was the *only* way a plaintiff could have standing to seek injunctive relief. 889 F.3d at 969-70. Here, Plaintiffs also have pled an additional theory of injunctive relief, which Defendants do not challenge: that there is a likelihood that they will be injured in the future if Defendants seek to rebrand the ICBINB Spray or replicate their same false representations on the other brands of butter substitutes they market and sell. FAC ¶¶ 86-87, 121.[30] Plaintiffs seek to enjoin Defendants from mislabeling *any* butter substitute as fat and calorie free. FAC at Prayer for Relief. [31] Such an approach is consistent with California law. *See* Bus. & Prof. Code, § 17203 ("The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition"); *Brockey v. Moore,* 107 Cal. App. 4th 86, 104 (2003) (enjoining misleading use of "legal aid" and "legal services" in a variety of contexts, not just that which was at issue in the case).[32]

---

[29] Defendant's citation of *Victor v. R.C. Bigelow, Inc.*, 708 F. App'x 333, 334 (9th Cir. 2017), is equally inapposite; that non-precedential case also involved a summary judgment motion, and it fails to account for the intervening *Davidson* decision.

[30] For example, Defendants recently rebranded the ICBINB Spray as "I Can't Believe Its So Good" in Europe. FAC ¶ 87. Were Defendants to do something similar here, and use the same false misrepresentations, Plaintiffs may believe it is a different product, and be tricked again. Likewise, if Defendants were to advertise their other products, such as Country Crock, using the same false misrepresentations, Plaintiffs could again be tricked.

[31] To be clear, Plaintiffs do not seek to represent consumers of purchasers of other brands of Defendants' products. Instead, upon a finding of liability, Plaintiffs will request that this Court fashion an injunction that cannot be evaded by simply replacing "I Can't Believe It's Not Butter" with "Country Crock." *See Brockey,* Cal. App. 4th at 104. *Cf. ITT Cont'l Baking Co. v. F.T.C.* 532 F.2d 207, 222 (2d Cir. 1976) (authorizing such an injunction; explaining that "[m[isrepresenting the growth properties of a food is a particular type of deceptive practice which the petitioners could equally well use in advertising other food products as in advertising Wonder Bread."). Further, one need not have a right to restitution to have a right to seek injunctive relief. *See, e.g. Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 336 (2010) ("To make standing under section 17204 dependent on eligibility for restitution under section 17203 would turn the remedial scheme of the UCL on its head.").

[32] If this Court finds that Plaintiffs do not have standing to seek injunctive relief in federal court, the proper solution is to sever those claims and remand to state court. *See Machlan v. P&G,* 77 F. Supp. 3d at 961 (severing and remanding claims for injunctive relief; holding that "[r]espect for comity and federalism compel that conclusion, and just tossing aside the state's injunction remedy

1

**H.      Plaintiffs Adequately Plead Claims for a Nationwide Class.**

2

Defendants argue that the nationwide class which Plaintiffs seek to represent to pursue a

3

claim for unjust enrichment is "geographically overbroad" under *Bristol-Myers Squibb Co. v.*

4

*Superior Court*, 137 S. Ct. 1773 (2017).[33] They are mistaken.

5

Multiple courts within this district have held that *Bristol-Myers*, which involved a state

6

court *mass* action, does not foreclose a nationwide federal court *class* action, particularly when as

7

here all the named plaintiffs are residents of the state in which the suit is brought. *See, e.g., Allen*

8

*II*, 2018 U.S. Dist. LEXIS 208196, at *19-20 (holding that *Bristol-Myers* does not apply to class

9

actions due to the procedural safeguards present in Fed. R. Civ. P. 23); *Fitzhenry-Russell v. Dr.*

10

*Pepper Snapple Grp., Inc.*, 2017 U.S. Dist. LEXIS 155654, at *8-10 (Sept. 22, 2017) (same); *In re*

11

*Chinese-Manufactured DryWall Products*, 2017 U.S. Dist. LEXIS 197612, at *16-20 (E.D. La.

12

Nov. 28, 2017) (same); *see also Bristol-Myers*, 137 S. Ct. at 1780 ("[O]ur decision concerns the

13

due process limits on the exercise of specific jurisdiction by a State.").

14

The cases that Defendants cite present no reason to depart from this district's majority rule.

15

In *Samsung* and *DeBernardis*, those courts' decisions were based on the expectation that other

16

courts would extend *Bristol-Myers* to class actions, which turned out to be wrong. *See In re*

17

*Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2018 WL 1576457, at *7-8 (N.D. Cal.

18

Mar. 30, 2018); *DeBernardis v. NBTY, Inc.,* , 2018 U.S. Dist. LEXIS 7947, at *2-7 (N.D. Ill. Jan.

19

18, 2018). The remaining case, *McDonnell v. Nature's Way Prod., LLC*, 2017 U.S. Dist. LEXIS

20

177892, at *11-13 (N.D. Ill. Oct. 26, 2017), simply failed to address the distinction between mass

21

and class actions. None of these cases present a persuasive argument why *Bristol-Myers* should

22

apply here.

23

**IV.      CONCLUSION**

24

For the foregoing reasons, Plaintiffs respectfully requests that this Court deny Defendants'

25

Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend the complaint.

26

27

because of this Court's limited jurisdiction is an unwarranted federal intrusion into California's
interests and laws").

28

[33] None of Plaintiffs other causes of action are on behalf of a nationwide class.

Dated: March 22, 2019                           **GUTRIDE SAFIER LLP**

                                                 ___/s/ Kristen Simplicio_____
                                                 Adam J. Gutride, Esq.
                                                 Seth A. Safier, Esq.
                                                 Kristen Simplicio, Esq.
                                                 Anthony J. Patek
                                                 100 Pine Street, Suite 1250
                                                 San Francisco, California 94114


                                                 **UREKA IDSTROM**
                                                 THE EUREKA LAW FIRM
                                                 5605 Belinder Road
                                                 Fairway, KS 66205
                                                 Telephone: (816) 665-3515
                                                 uidstrom@eurekalaw.com


                                                 Attorneys for Plaintiffs