1   CLAUDIA M. VETESI (CA SBN 233485)
    CVetesi@mofo.com
2   ELIZABETH BALASSONE (CA SBN 280563)
    EBalassone@mofo.com
3   CLAIRE BONELLI (CA SBN 317735)
    CBonelli@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone:   415.268.7000
6   Facsimile:   415.268.7522

7   Attorneys for Defendants
    UNILEVER UNITED STATES, INC.,
8   UPFIELD US INC. AND
    UPFIELD SOURCING US, INC.

9

10                     UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

13

14   JENNIFER ZIZUMBO, CHANDRA          Case No. 4:18-cv-07213-JSW
     ZUNDEL, and ADRIANNE ORDAZ, on     Related to: 4:13-cv-01675-JSW
15   behalf of themselves and all others similarly
     situated,                         **DEFENDANTS' REPLY TO MOTION TO
16                                      DISMISS FIRST AMENDED CLASS
                    Plaintiffs,         ACTION COMPLAINT AND MOTION
17                                      TO STRIKE CLASS ALLEGATIONS**
            v.
18                                      Hearing Date:   May 3, 2019
     UNILEVER UNITED STATES, INC.,      Time:           9:00 a.m.
19   UPFIELD US INC. (formerly known as Judge:          Hon. Jeffrey S. White
     UNILEVER BSC US INC.) AND UPFIELD  Action Filed:   October 19, 2018
20   SOURCING US, INC. (formerly known as
     UNILEVER BSC SOURCING US, INC.),
21   Delaware corporations,

22                    Defendants.

23                                              .

24
                         REDACTED VERSION OF
25
                    DOCUMENT SOUGHT TO BE
26
                              SEALED
27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   ARGUMENT ........................................................................................................ 2

    A.    All of Plaintiffs' Claims Are Expressly Preempted. ........................................ 2

        1.    Plaintiffs' Claims Are Expressly Preempted Because They Are
            Predicated on FDA Regulations. .............................................................. 2

        2.    Plaintiffs' "Serving Size" and "Nutrient Content" Claims Are
            Expressly Preempted Because ICBINBS Is a "Spray Type" Under
            FDA Regulations. .................................................................................... 4

        3.    Plaintiffs' "Statement of Identity" Claim Is Expressly Preempted
            Because the ICBINBS Label Has Satisfied the "Appropriately
            Descriptive Term" Requirement. ............................................................. 7

    B.    Plaintiffs' 40-Spray Serving Size and Extrapolation from Serving Size to
        Entire Bottle Are Not Plausible. ..................................................................... 8

    C.    Plaintiffs' Omission Claims Are Not Plausible. ............................................. 9

    D.    Plaintiffs' Claims Fail Rule 9(b). ................................................................ 10

    E.    Plaintiffs Lack Standing to Rely on ICBINB Website Statements. .................. 11

    F.    Plaintiffs Lack Standing to Seek Injunctive Relief. ....................................... 12

    G.    Plaintiffs' Class Definition Is Geographically Overbroad. .................................. 13

    H.    Unilever Is an Improper Defendant. ............................................................. 13

III.  CONCLUSION .................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allen v. Conagra Foods, Inc.*
    No. 3:13-cv-01299-WHO, 2018 U.S. Dist. LEXIS 208196
    (N.D. Cal. Dec. 10, 2018) ...................................................................................1, 5, 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................................15

*Bristol-Myers Squibb Co. v. Super. Ct. (BMS),*
    137 S. Ct. 1773 (2017) .......................................................................................1, 13

*Buckman Co. v. Pls.' Legal Comm.,*
    531 U.S. 341, 349 (2001) .........................................................................................2

*Cardona v. Target Corp.,*
    No. CV 12-1148-GHK, 2013 WL 1181963 (C.D. Cal. Mar. 20, 2013) ...................8

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018)..................................................................................12

*Farm Raised Salmon Cases,*
    42 Cal. 4th 1077 (2008) ...........................................................................................3

*Fernandez v. Atkins Nutritionals, Inc.*
    No. 3:17-cv-1628-GPC-WVG, 2018 WL 280028
    (S.D. Cal. Jan. 3, 2018) ..........................................................................................12

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
    No. 17-CV-00564 NC, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017)...................13

*Freeman v. Time, Inc.,*
    68 F.3d 285 (9th Cir. 1995)......................................................................................9

*Ham v. Hain Celestial Grp., Inc.,*
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) ...................................................................10

*Hodsdon v. Mars Inc.,*
    891 F.3d 857 (9th Cir. 2018)................................................................................9, 10

*In re ConAgra Foods, Inc.,*
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) .................................................................10

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
    No. 09MD2087-BTM (AJB), 2010 WL 1838080 (S.D. Cal. May 5, 2010)............11

ii

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ..................................................................................................15

*Lilly v. ConAgra Foods, Inc.*,
  743 F.3d 662 (9th Cir. 2014) .....................................................................................................4

*Machlan v. Procter & Gamble*
  77 F. Supp. 3d 954, 963 (N.D. Cal. 2015) ........................................................................12, 14

*McDonnell v. Nature's Way Prods., LLC* ......................................................................................13
  No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017)

*Pardini v. Unilever United States, Inc*,
  961 F. Supp. 2d 1048 (N.D. Cal. 2013) ("*Pardini I*").................................................1, 5, 6, 8

*Pardini v. Unilever United States, Inc.*,
  No. 4:13-cv-01675-JSW, 2014 WL 265663 (N.D. Cal. Jan. 22, 2014)
  ("*Pardini II*")..................................................................................................................5, 6, 7, 8

*Perez v. Nidek*,
  711 F.3d 1109 (9th Cir. 2013)....................................................................................................2

*Rosen v. Unilever U.S., Inc.*,
  No. C 09-cv-02563 JW, 2010 WL 4807100 (N.D. Cal. May 3, 2010) ......................................9

*Sud v. Costco Wholesale Corp.*,
  229 F. Supp. 3d 1075 (N.D. Cal. 2017) ..................................................................................10

*Vasic v. Patent Health, L.L.C.*
  No. 13cv849 AJB (MDD) 2013 U.S. Dist. LEXIS 125633
  (S.D. Cal. Sept. 3, 2013) ..........................................................................................................14

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934, 938 (9th Cir. 2008)..............................................................................................8

*Williams v. Spencer*,
  883 F. Supp. 2d 165 (D.D.C. 2012) ...........................................................................................4

*Wyeth v. Levine*,
  555 U.S. 555 (2009)....................................................................................................................2

**Statutes**

21 U.S.C.
  § 337(a) .......................................................................................................................................3
  § 343-1 ........................................................................................................................................7
  § 343-1(a) ....................................................................................................................................2

Cal. Health & Safety Code
    § 110100(a) .................................................................................................................3

**Regulations**

21 C.F.R.
    § 1.21(a) ......................................................................................................................4
    § 101.3(b)(1)-(3) ........................................................................................................7
    § 101.12(a)(1) .............................................................................................................5
    § 101.12(b) .................................................................................................................5
    § 102.5 ........................................................................................................................7
    § 102.5(b) ...................................................................................................................7

58 Fed. Reg. 2229 (Jan. 6, 1993) .......................................................................................5

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs' Opposition fails to rebut Defendants' categorization of the spray product called "I Can't Believe It's Not Butter! Spray®" (ICBINBS) as a "Spray type" under FDA regulations. In the published *Pardini I* decision and subsequent *Pardini II* decision, this Court already found that ICBINBS belongs in the "Spray type" category, rendering the serving sizes compliant and the "0 g fat per serving" and "0 calories per serving" statements lawful.  Plaintiffs' deception and omissions claims are implausible and insufficient under Rule 9(b), and lack standing; their Opposition fails to establish otherwise.

First, Plaintiffs argue that a spray is not a spray by recycling the facts and arguments already rejected twice in *Pardini*, and rely on unpublished rulings in the *Allen v. ConAgra* case also brought by Plaintiffs' counsel.  Their efforts to avoid the plain language of FDA regulations fail yet again.

Second, the Opposition admits that Plaintiffs are not relying on the website statements to make their claims.  Plaintiffs' claims based on the labels are implausible and fail Rule 9(b) because they admitted in their original complaint that they read the ingredient list, which included sweet cream buttermilk and soybean oil.  They cannot now claim that they only read the label "generally."

Third, Plaintiffs lack Article III standing to seek injunctive relief because they fail to allege any concrete plans to purchase ICBINBS again in the future and because they know the fat and calories in the product.  Plaintiffs' "desire" to buy some other products does not give them standing in this case.  Nor can Plaintiffs rely on an overly narrow reading of *Bristol-Myers Squibb Co. v. Superior Court* for standing to assert a nationwide class for their unjust enrichment cases. Courts have rejected such a reading that excludes application to federal courts and class actions.

Fourth, both Unilever and Upfield agree that Unilever is not a proper defendant here because Upfield owns ICBINBS and ███████████████████████.  This is confirmed by the terms of the Contribution Agreement.  The outdated factual issues and contrary

1    hypotheticals raised in Plaintiffs' Opposition should be rejected, and Plaintiffs' claims against

2    Unilever should be dismissed.

3    **II.    ARGUMENT**

4        **A.    All of Plaintiffs' Claims Are Expressly Preempted.**

5        Defendants showed in their Opening Memorandum that Plaintiffs' "serving size,"

6    "nutrient content," and "statement of identity" claims are expressly preempted by the FDCA.[1]

7    (Mem. at 9-16.)  As a preliminary matter, Plaintiffs point to the "strong presumption against

8    preemption" (Opp. at 9), but then acknowledge that this presumption specifically excludes cases

9    where the "clear and manifest purpose of Congress" was to preempt claims.  *Wyeth v. Levine*, 555

10   U.S. 555, 565 (2009).  The plain language of the FDCA evidences a clear and manifest purpose to

11   preempt claims like the ones raised by Plaintiffs in this case.  *See* 21 U.S.C. § 343-1(a) (providing

12   that "[e]xcept as provided in subsection (b), no State or political subdivision of a State may

13   directly or indirectly establish under any authority or continue in effect as to any food in interstate

14   commerce").  The presumption does not apply here.

15                **1.    Plaintiffs' Claims Are Expressly Preempted Because They Are
                          Predicated on FDA Regulations.**
16

17       Next, Plaintiffs contend that the express preemption provision of the FDA does not apply

18   because they have sued under "general state laws pertaining to advertising and sale of all good[s]

19   and services[.]" (Opp. at 10.)  Plaintiffs also argue that Defendants' "preemption is an

20   affirmative defense" and thus "bears the burden of proof." (*Id.* at 9-11.)  But that does not change

21   the law of preemption, or the conclusion that Plaintiffs' claims are preempted under the law.

22       There is no private right of action to enforce compliance with the FDCA.  *See Buckman*

23   *Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001); *Perez v. Nidek*, 711 F.3d 1109, 1119-20

24   (9th Cir. 2013).  "[A]ll such proceedings for the enforcement, or to restrain violations, of [the

25

26       [1] Defendants' Opening Memorandum also showed that any "asterisk" claim related to the
     "ADDS A DIETARILY INSIGNIFICANT AMOUNT OF FAT" statement is similarly
27   preempted by FDA regulations.  (Mem. at 16-17.)  Because Plaintiffs have not included
     discussion or argument in response, Defendants assume any such claim has been abandoned.
28

1   FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a).  California's

2   Sherman Law establishes requirements that are identical to those in the FDCA.  *See* Cal. Health

3   & Safety Code § 110100(a) (providing that the food labeling regulations and any amendments

4   adopted pursuant to the FDCA are "the food labeling regulations of this state").  Plaintiffs assert

5   their claims under state laws because they must do so.

6          Even though they are raised under various state consumer laws, Plaintiffs' claims are

7   preempted because they are all based on alleged FDA violations.  For example, Plaintiffs' claim

8   for "Fraud, Deceit, and/or Misrepresentation" alleges:

9                  Instead of using the one-tablespoon serving size ***required by FDA***
                   ***regulations***, Defendants chose to use serving sizes of one spray and
10                 five sprays for the ICBINB Spray label.  Defendants ***failed to use***
                   ***the proper FDA subcategory*** for ICBINB Spray—"Butter,
11                 margarine, oil and shortening." In doing so, Defendants not only
                   ***violated FDA regulations***, but also ignored the fact that when
12                 consumers use ICBINB Spray, they use many more sprays.

13  (FAC ¶ 135 (emphases added).)  Plaintiffs' claim for violation of the UCL similarly alleges that

14  Defendants are "failing to use the one-tablespoon serving size required by FDA regulations for

15  the ICBINB Spray label" and "failing to use the proper FDA subcategory for ICBINB Spray—

16  "Butter, margarine, oil and shortening." (FAC ¶ 180.)  While Plaintiffs' remaining claims do not

17  explicitly cite FDA regulations, they are each premised on these purported violations.  (*E.g.*, *id.*

18  ¶¶ 153-54, 160, 171-72 (alleging Defendants violated the CLRA and FAL by making

19  "representations" that "lead consumers to believe that ICBINB Spray has no calories and fat").

20         To be sure, a suit may seek to enforce the requirements of the Sherman Food, Drug, and

21  Cosmetic Law, which are identical to those in the FDCA.  *See, e.g.*, *Farm Raised Salmon Cases*,

22  42 Cal. 4th 1077, 1086-87 (2008).  In *Farm Raised Salmon*, producers used artificial color

23  additives to "pass off" farm-raised salmon as wild.  *Id.* at 1083-84.  Plaintiffs brought claims

24  under consumer protection statutes—including the UCL, with violation of the Sherman Law as a

25  predicate under the "unlawful" prong.  *See id.*  Those claims only survived because the Sherman

26  Law imposes identical requirements to the FDCA.  *See* Cal. Health & Saf. Code § 110100(a).

27  Here, Plaintiffs seek to impose requirements on Defendants that are *different* than the

28  requirements of the FDCA, so their claims are preempted.  For example, Plaintiffs allege that

1   Defendants were required to select a 1 Tablespoon serving size and cannot classify ICBINBS as a

2   "Spray type."  (FAC ¶¶ 41-57.)  Plaintiffs cannot disguise the impact of their claims under state

3   law causes of action.

4           Finally, Plaintiffs attempt to recycle one of their arguments from the *Pardini* case by

5   contending that the Ninth Circuit "made clear" in *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662 (9th

6   Cir. 2014), "that claims falling under 21 C.F.R. 101.9 are *not* preempted."  (Opp. at 12; *Pardini v.*

7   *Unilever United States, Inc.*, No. 4:13-CV-01675-JSW (N.D. Cal. Mar. 16, 2008), ECF No. 76 at

8   7.)  The Court rejected that argument and denied the *Pardini* plaintiffs' motion for

9   reconsideration (ECF No. 82) as *Lilly* made no such holding.  In *Lilly*, the plaintiff claimed that

10  the defendant improperly omitted the sodium included on sunflower seeds shells from the total

11  sodium content included in the seeds' nutrition panel.  743 F.3d at 664.  The defendant argued

12  that federal law expressly preempted these claims because the FDA specifies that sodium content

13  must be based only on edible portions of a food, and FDA specifies that shells are not edible.  *Id.*

14  at 665.  The Ninth Circuit held that the shell coating was indisputably edible and that the

15  plaintiff's allegations were not preempted because defendant's labeling claims were inconsistent

16  with federal requirements.  *Id.*  In this way, *Lilly* supports preemption because it shows that a

17  court may decide facial preemption—and dismiss—based on the particular facts in a plaintiff's

18  pleading.

19              **2.      Plaintiffs' "Serving Size" and "Nutrient Content" Claims Are**
                **Expressly Preempted Because ICBINBS Is a "Spray Type" Under**
20              **FDA Regulations.**

21          Plaintiffs' "serving size" and "nutrient content" claims are both based on the faulty

22  premise that ICBINBS cannot be categorized as a "Spray type" under FDA regulations.[2]

23  Plaintiffs' Opposition shows that is wrong for five reasons.

24  _____

25      [2] Plaintiffs contend in their Opposition, for the first time, that they also have a claim under
    21 C.F.R. § 1.21(a).  (Opp. at 16.)  There is no reference to that regulation, or any such claim, in
26  the FAC.  Plaintiffs cannot invent new claims in their brief.  *E.g.*, *Williams v. Spencer*, 883 F.
    Supp. 2d 165, 181 n.8 (D.D.C. 2012).  Acknowledging as much, Plaintiffs request leave to amend
27  their UCL claim to "add additional facts" to support such a claim.  (Opp. at 16 n.18.)  Because
    Plaintiffs would fail to show materiality as required under 21 C.F.R. § 1.21(a) for the same
28  reasons as their other claims (*see* discussion Part II.C. *infra*), the request should be denied.

First, Plaintiffs admit that this Court has already decided that ICBINBS is properly categorized as a "Spray type" under FDA regulations in *Pardini I*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013), and *Pardini II*, No. 4:13-cv-01675-JSW, 2014 WL 265663 (N.D. Cal. Jan. 22, 2014). *Pardini I* is a published decision. To suggest that this Court diverge from its decisions in *Pardini I* and *Pardini II*, Plaintiffs cite to two unpublished rulings in *Allen v. ConAgra Foods, Inc.* (*See* Opp. at 11 n.10.) As explained below, the decisions in *Pardini* and the FDA's 2018 Guidance show why the Court should decline to adopt the rulings in *Allen v. ConAgra*.

Second, Plaintiffs do not dispute that the FDA provides that manufacturers choose one "reference" category from the Serving Size Table that is "most appropriate for the specific product" and use the corresponding serving size for determining the per-serving nutritional information. (FAC ¶ 39; Mem. at 10-11 (citing 21 C.F.R. § 101.12(b) n.4.) The Court in *Pardini* found that the "Spray type" category was "most appropriate" for ICBINBS for two reasons: because it is dispensed as a spray and because a reasonable consumer could only measure the serving size as a spray.[3] *Pardini I*, 961 F. Supp. 2d at 1055 n.3.

Third, Plaintiffs do not dispute that the FDA's regulatory scheme is based on the FDA's calculation of reference amounts that reflect the amount of food customarily consumed, based on its national food consumption surveys. (FAC ¶¶ 38-39); 21 C.F.R. § 101.12(a)(1). "The reference amounts are part of the standards. Manufacturers ***cannot deviate from the reference amount simply because they believe that such deviation is supported by food consumption data***." 58 Fed. Reg. 2229, 2273 (Jan. 6, 1993) (emphasis added).

Fourth, Plaintiffs suggest that the FAC provides additional "facts" that *Pardini I* and *Pardini II* "did not address." (Opp. at 1.) Not true. As explained in Defendants' Opening Memorandum, three of the four arguments advanced in the FAC were specifically rejected by this Court in *Pardini I* and *Pardini II*:

---

[3] Defendants also note that there is ample evidence in the FDA's 2018 Guidance on Reference Amounts that show product form matters. For example, the reference amount for *grated* hard cheese is 5 grams. (RJN Ex. A at p. 16.) The reference amount for a *block* of the same cheese is 30 grams. (*Id.*) The FDA similarly created separate subcategories under "FATS AND OILS" to account for product form. (*Id.* at pp. 19-20.)

| Allegation in FAC | Decision |
|---|---|
| "[C]ooking spray" is inconsistent with ICBINB Spray's "actual conditions of use," and is not the product's "major intended use" because it is used as a "topping" where it is substituted for butter (FAC ¶¶ 48-49) | ICBINB Spray's potential use as both a "cooking spray" and a "topping" does "not mean that it is not a cooking spray." *Pardini I*, 961 F. Supp. 2d at 1055. |
| "[W]ater [] comprises 60% of ICBINB Spray" and is not like "Pam" (FAC ¶ 50) | This argument is rejected as "conclusory and belied by the facts alleged in the complaint" as no authority to show FDA's "scant examples" of spray-type fats and oils meant that the category was "exclusive" to those sprays. *Pardini I*, 961 F. Supp. 2d at 1055; *Pardini II*, 2014 WL 265663, at *5. |
| ICBINB Spray is "dispensed via manual pump without the assistance of propellant" (FAC ¶ 51) | FDA makes clear that the use of particular metrics, such as "seconds [of] spray," are not required. *Pardini I*, 961 F. Supp. 2d at 1055. |

And Plaintiffs offer no authority to support their fourth argument—that ICBINBS is not a spray because sprays are "not intended to impart flavor on a food." (FAC ¶ 55.) There is no basis to conclude that the FDA "Spray type" category is limited in this way.

Fifth, Plaintiffs' contention that "the question before this Court is whether the ICBINB Spray is 'more like Pam® or liquid butter'" (Opp. at 11) ignores the FDA's 2018 Guidance that reflects its broad view of the "Spray type" category. In its 2018 Guidance, the FDA changed the non-exhaustive examples of products falling within the "Spray types" category from "Nonstick cooking sprays (e.g., Pam)" to "All types of cooking sprays (e.g., cooking spray olive oil)." (RJN Ex. A at p. 20.) This confirms that the FDA did not intend to limit this category to only Pam, or sprays exactly like Pam. It supports this Court's approach in *Pardini*, finding that ICBINBS's designation as a "Spray type" was not "inconsistent with the regulation" and that the specific "Spray type" category was more appropriate because "specifically it is a spray-type fat or oil." *Pardini I*, 961 F. Supp. 2d at 1055 n.3; *Pardini II*, 2014 WL 265663, at *5. The Court should find Plaintiffs' "serving size" and "nutrient content" claims are preempted.

1

2

### 3. Plaintiffs' "Statement of Identity" Claim Is Expressly Preempted Because the ICBINBS Label Has Satisfied the "Appropriately Descriptive Term" Requirement.

3    Plaintiffs admit that they do not have a viable "statement of identity" claim across the

4   ICBINBS labels put at issue by the proposed class period (October 15, 2014 to present), as the

5   label has included a "40% vegetable oil" statement since mid-2018.  (Opp. at 17 n.20 (citing FAC

6   ¶ 79); FAC ¶ 122.)

7    As to the ICBINBS labels in use prior to mid-2018, Plaintiffs' "statement of identity"

8   claim relies on the faulty premise that the label violates the FDCA because it was required to use

9   a "common or usual" name under 21 C.F.R. § 102.5.  (Opp. at 16.)  Not true.  As explained in the

10   Opening Memorandum, a "statement of identity" can take three different forms:  (1) a name

11   specified by federal law or regulation; or if none, (2) a "common or usual name;" or, if none, (3)

12   "an appropriately descriptive term."  (Mem. at 15 (citing 21 C.F.R. § 101.3(b)(1)-(3).)  The

13   ICBINBS labels have included appropriately descriptive terms like "buttery spray" under the

14   third prong.  (*Id.*)

15    Plaintiffs continue to conflate these three distinct categories by arguing that the "term

16   'buttery spray' does not satisfy the requirement for a uniform, common name."  (Opp. at 16.)  A

17   term under the third category need not satisfy the requirements for a name under the second

18   category.  An "appropriately descriptive term" meets the requirements of the FDA.  Plaintiffs'

19   attempt to impose statement of identity requirements that are not identical to FDA requirements is

20   clearly within the "broad preemption provision" of the FDCA.  *See Pardini II*, 2014 WL 265663,

21   at *3; *see also* 21 U.S.C. § 343-1.

22    Even if a "common or usual name" were also required under FDA regulations, Plaintiffs'

23   claim that the statement must include "40% vegetable oil" still fails.  Neither of the two additional

24   requirements to trigger disclosure of a "characterizing ingredient" are required.  First, Plaintiffs

25   have not alleged that a "40% vegetable oil" statement "has a material bearing on price or

26   consumer acceptance."  21 C.F.R. § 102.5(b).  Plaintiffs' allegation that Defendants "perpetuated

27   the belief" that ICBINBS "contained a negligible amount of fat and calories on a percentage

28   basis" (FAC ¶ 82) does not allege materiality.  And the Named Plaintiffs admitted in their

1    original complaint that they read the list of ingredients, which includes "soybean oil," and thus

2    cannot allege that a "40% vegetable oil" statement would have a material bearing on their

3    acceptance.  (Mem. at 16 n.10.)  Second, Plaintiffs have not alleged that consumers understand

4    the "common or usual name" of ICBINBS to include vegetable oil.  (Mem. at 16 (citing *Cardona*

5    *v. Target Corp.*, No. CV 12-1148-GHK (SPx), 2013 WL 1181963, at *9-10 (C.D. Cal. Mar. 20,

6    2013).)  Plaintiffs' statement of identity claim is preempted.

7         **B.      Plaintiffs' 40-Spray Serving Size and Extrapolation from Serving Size to
                    Entire Bottle Are Not Plausible.**

8

9         The parties agree that statements are actionable only if they are likely to deceive a

10   reasonable consumer.  (Mem. at 17 & Opp. at 18 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d

11   934, 938 (9th Cir. 2008).)  But in response to the Court's findings in *Pardini I* and *Pardini II* that

12   their proposed 40-spray serving size is implausible, Plaintiffs make the same flawed argument

13   that "[t]he regulations require Defendants to use the one tablespoon reference amount."  (Opp. at

14   18.)  That is not what this Court decided in *Pardini I* and *Pardini II*:  if "it takes forty sprays to

15   fill a tablespoon, then Plaintiff's claim rests on the implausible assumption that consumers

16   customarily pump a container of ICBINBS forty times per serving."  *Pardini I*, 961 F. Supp. 2d at

17   1056; *Pardini II*, 2014 WL 265663, at *6 ("Plaintiffs' insistence that the serving size should be

18   listed as forty sprays remains implausible.").  This Court found it "far more plausible in this case

19   that, as Plaintiffs themselves state, 'Manufacturers must use the defaulted serving size of one

20   tablespoon for any 'Fat and Oil' *unless the product fits within a more specific subcategory*.'"

21   *Pardini II*, 2014 WL 265663, at *5.  "The subcategory here, according to the regulations and the

22   face of the FAC, is 'Fats and Oils: Spray Type.'"  *Id.*

23        Indeed, the recipes on the ICBINB website offer helpful examples of why Plaintiffs'

24   proposed 40-spray serving size is implausible.  The Buttery Cilantro Steak recipe uses 10 sprays

25   of ICBINBS for 4 people (or 2.5 servings per person).  (RJN Ex. H.)  Plaintiffs' proposed serving

26   size would increase the number of ICBINBS sprays in the recipe to ***400***.  For the same reasons the

27   Court identified in *Pardini I*, Plaintiffs' proposed serving size leads to the implausible result that

28   a consumer would pump the container ***four hundred times*** for this recipe.

In response to the implausibility of Plaintiffs' second deception claim that they "believed" the entire ICBINBS bottle "had no fat and no calories," Plaintiffs contend that the FAC contains sufficient allegations because there was "no way to know what the actual amount of fat and calories would be" beyond a single serving. (Opp. at 18.) But Plaintiffs need not have known the exact amount of fat and calories for multiple servings to know that the product contained fat and calories because its ingredients contained fat and calories. Again, the Named Plaintiffs are stuck with the allegations asserted in their original complaint: they read the ingredient list, which included sweet cream buttermilk and soybean oil. (Mem. at 16 n.10.)[4]

Plaintiffs' Opposition does not discuss *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995), and does not meaningfully distinguish *Rosen v. Unilever U.S., Inc.*, No. C 09-cv-02563 JW, 2010 WL 4807100, at *5 (N.D. Cal. May 3, 2010), which found plaintiffs' claims were based on the implausible assumption that the whole is nothing more than the sum of its parts. (Mem. at 19-20.) Plaintiffs' extrapolation from one serving to the entire bottle is not the same as Plaintiffs' hypothetical consumers who eat two 100 calorie cookies and conclude they have eaten 200 calories. (Opp. at 18 n.22.) Plaintiffs' admission that they read the ingredient list forecloses their claims that they relied on the serving size statements and were deceived about the product as a whole.

## C. Plaintiffs' Omission Claims Are Not Plausible.

As with their claims based on alleged affirmative misrepresentations, Plaintiffs' omissions claims similarly fail as implausible. In response, Plaintiffs contend that Defendants rely on "outdated law" but cite the same case as Defendants: *Hodsdon v. Mars Inc.*, 891 F.3d 857 (9th Cir. 2018). As explained in Defendants' Opening Memorandum, Plaintiffs' omission claims fail under either this safety standard, or the standard to allege a defect that undermines the central function of ICBINBS. (Mem. at 21 n.16.) In context with the other disclosures on the label (*e.g.*,

---

[4] Plaintiffs offer various hypotheticals in their Opposition about what consumers might have thought about fat and calorie content, including a theory that consumers may "reasonably believe that food science may make it possible to remove the fat and calories from ingredients." (Opp. at 19 n.24.) Plaintiffs admit that this is not alleged in the FAC, and thus Defendants do not offer further response here.

soybean oil and sweet cream buttermilk on first line of ingredients, and asterisk disclosing fat), Plaintiffs have not alleged a defect that undermines the central function of ICBINBS.

Second, Plaintiffs rely on *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1085 (N.D. Cal. 2017) to contend that Defendants' "0 calories" statement is a "misrepresentation" contrary to the alleged omitted 40% vegetable oil statement of identity.  (Opp. at 20.)  Plaintiffs continue to truncate a crucial part of that label statement:  "0 Calories *Per Serving*."  (FAC at p. 5 (emphasis added).)  That label statement is not contrary to any 40% vegetable oil statement.

Third, Plaintiffs cite *Hodsdon* for the proposition that Defendants had a duty to disclose the product "was actually 40% vegetable oil."  (Opp. at 19-20.)  Plaintiffs suggest that the FDA regulation requiring the 40% vegetable oil statement of identity "establishes that the information is material."  (Opp. at 20.)  As explained above, there is no such requirement.  (*See* discussion *supra* Part II.A.3.)  In any event, *Hodsdon* makes clear that such a duty requires "exclusive knowledge of *material* facts" or a defendant who "actively conceals a *material* fact[.]"  (Opp. at 19 (emphases added).)  Plaintiffs cannot establish that the 40% vegetable oil disclosure would be material where they read the ingredient list.

### D.    Plaintiffs' Claims Fail Rule 9(b).

Plaintiffs misunderstand their failures to adequately plead fraud claims under Rule 9(b) and still cannot explain exactly how they were misled or why any reasonable person could be deceived by ICBINBS's labels.  By summarizing the labels and ignoring key words—such as "per serving" and "sweet cream buttermilk" and "soybean oil"—Plaintiffs cannot contend that they relied on the alleged misrepresentations with any particularity.

As a preliminary matter, the cases cited by Plaintiffs show the types of information that Plaintiffs have failed to include in the FAC.  *E.g.*, *In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090, 1099 (C.D. Cal. 2012) (alleging at least some information about the location and the frequency with which they viewed the allegedly misleading statements); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1194-95 (N.D. Cal. 2014) (alleging when purchases began and ended, and attaching relevant labels to the complaint).  Contrary to Plaintiffs' assertion, Defendants do not claim that Plaintiffs "must identify pictures of every version of the label that

they purchased[.]" (Opp. at 20.) But Plaintiffs have included various pictures in the FAC and do not allege whether they actually purchased those versions of the product. (FAC at pp. 5-8.) Plaintiffs admit that there are multiple versions of labels over the proposed class period, and their failure to allege with some precision what labels were on what they purchased fails the Rule 9(b) standard. (Mem. at 22 (citing *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087-BTM (AJB), 2010 WL 1838080, at *2 (S.D. Cal. May 5, 2010)).)

As explained above, Plaintiffs' allegations of reliance are also lacking in light of their admission in the original complaint that they read the ingredient list. Plaintiffs cannot now claim that they only "generally" read the back label and "did not understanding anything on the label[.]" (Opp. at 21 n.28.) Plaintiffs need not have known exactly how many calories or grams of fat were in multiple servings, or know the exact percentage of vegetable oil in the product. A reasonable consumer who read the back label and the ingredient list would know that the product contained fat from the sweet cream buttermilk and soybean oil, and would not be deceived by the FDA requirement that ICBINBS be rounded down to 0 calories and 0g fat *per serving.* Plaintiffs' claims fail Rule 9(b).

**E.    Plaintiffs Lack Standing to Rely on ICBINB Website Statements.**

Plaintiffs admit that their claims do not rely on the ICBINB website statements cited in the FAC. (Opp. at 22.) Plaintiffs thus concede the point that they lack standing to rely on those statements. Instead, Plaintiffs appear to be reserving the statements for future argument related to "*Defendants' state of mind*" and that the 1-spray serving size is "disingenuous" because there are recipes on the website that call for more than 1 spray. (*Id.*) Defendants need not address any future arguments regarding their state of mind or intent at this stage.[5]

---

[5] Plaintiffs' Opposition repeatedly refers to the fact that some recipes on the ICBINB website call for more than 1 spray of ICBINBS. (Opp. at 3, 13-14.) Defendants' Opening Memorandum explains that no recipe with more than 1 spray per person suggests that it calls for a single serving of ICBINBS per person. (Mem. at 23 n.20.)

1

### F.    Plaintiffs Lack Standing to Seek Injunctive Relief.

2

The parties again agree on the standard that Plaintiffs must allege with concreteness that

3

they will purchase the product again in the future.  (Mem. at 23 & Opp. at 22 (citing *Davidson v.*

4

*Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)).)  But Plaintiffs have failed that

5

standard because they do not allege that they seek to repurchase ICBINBS in the future.  (FAC

6

¶ 121.)  Plaintiffs cite to *Allen v. Conagra* (Opp. at 22), where the court found that plaintiffs had

7

standing at the pleading stage because they alleged to have no way to "determine if the [zero fat,

8

zero calorie] representation is true" and may therefore be at risk of being misled.  No. 3:13-cv-

9

01299-WHO, 2018 U.S. Dist. LEXIS 208196, *38 (N.D. Cal. Dec. 10, 2018).  Here, Plaintiffs

10

have alleged that they know how much fat and calories are in ICBINBS (FAC ¶ 1) and there is no

11

such risk.

12

In any event, Plaintiffs admit that the current ICBINBS label includes a "40% vegetable

13

oil" statement.  (FAC ¶ 79; RJN Ex. B.)  And Plaintiffs now know the fat and calorie content of

14

ICBINBS.  (FAC ¶ 1.)  Plaintiffs cite to *Fernandez v. Atkins Nutritionals, Inc.* (Opp. at 22), but

15

do not dispute its holding that injunctive relief is improper where plaintiffs know about the

16

alleged misrepresentation and can no longer be deceived.  No. 3:17-cv-1628-GPC-WVG, 2018

17

WL 280028, at *15 (S.D. Cal. Jan. 3, 2018).  (Mem. at 24 n.21.)  Instead, they appear to suggest

18

that an "additional theory of injunctive relief" gives them standing:  that they will be injured if

19

Defendants "seek to rebrand the ICBINB Spray or replicate their same false representations on

20

the other brands of butter substitutes they market and sell."  (Opp. at 23.)  But reference to some

21

other products not at issue in the case does not afford Plaintiffs standing in this case.  As

22

Plaintiffs' cited case *Machlan* makes clear:  "when the alleged unfair practice is deception, the

23

previously-deceived-but-now-enlightened plaintiff simply does not have standing under Article

24

III to ask a federal court to grant an injunction."  77 F.Supp.3d at 960.[6]

25

———————————————————

26

[6] If the Court agrees Plaintiffs do not have standing to seek injunctive relief, Plaintiffs suggest that the "proper solution is to sever those claims and remand to state court."  (Opp. at 23 n.32.)  That is not appropriate here because Plaintiffs have no claims to remand:  the "statement of identity" claim has been resolved by the current label and their other claims should be rejected as, among other things, preempted and implausible.

27

28

### G.    Plaintiffs' Class Definition Is Geographically Overbroad.

Defendants have moved to strike Plaintiffs' nationwide class allegations (which Plaintiffs clarify only relate to their unjust enrichment claim) in light of *Bristol-Myers Squibb Co. v. Superior Court* (*BMS*), 137 S. Ct. 1773 (2017).  (Mem. at 24-25.)  In response, Plaintiffs argue that courts within this district have not applied *BMS* to federal courts or class actions.  (Opp. at 24.)  But in the case Plaintiffs cite, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, the court explicitly rejected the state versus federal court distinction.  No. 17-CV-00564 NC, 2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017) ("The Court finds no merit in the plaintiffs' first argument that Bristol-Myers does not apply to federal courts.").  The court explained that "federal courts routinely apply the specific jurisdiction analysis to defendants in cases that are before them solely on the basis of diversity."  *Id.*  The court concluded that there was no reason to limit the reasoning in *BMS* to state courts because the concerns related to determining if personal jurisdiction lay in California "do not disappear because the case is removed, like it was here."  *Id.*  As with *Fitzhenry-Russell*, this case is solely before the court on the basis of diversity jurisdiction.  All of the claims presented are state law claims, and this case was removed from state court.  (ECF No. 1.)  To support its mass tort versus class action distinction, Plaintiffs try to sidestep *McDonnell v. Nature's Way Products, LLC* by suggesting that the court "simply failed to address the distinction."  (Opp. at 24.)  But *McDonnell* explicitly recognized that *BMS* "addressed mass actions" whereas the situation in this case concerns "a single plaintiff injured in the forum state seeks to represent a multi-state class, with only the named plaintiff injured in the forum state."  No. 16 C 5011, 2017 WL 4864910, at *4 n.7 (N.D. Ill. Oct. 26, 2017).  The court concluded that it was a distinction without a difference, and dismissed all the claims on behalf of the prospective class members from other states.  *Id.* at *5.  Plaintiffs' nationwide class allegations should be stricken.

### H.    Unilever Is an Improper Defendant.

Defendants have repeatedly explained to Plaintiffs and produced documents that confirm Unilever is not a proper defendant in this case.  There is *no dispute* between Unilever and Upfield that Upfield owns ICBINBS and ████████████████████████.  (*E.g.*, ECF No. 35-3 at

6.)  Nevertheless, Plaintiffs continue to argue that this issue cannot be resolved under Rule 12(b)(1) or 12(b)(6).  (Opp. at 6-8.)

First, Plaintiffs' claims against Unilever fail Rule 12(b)(1) because Plaintiffs' conclusory allegation that Unilever shares some "responsibility" is contradicted by the Contribution Agreement and other supporting documents.  (Mem. at 5-9; Schwartz Decl. ¶¶ 3-10, Exs. A-E.) The cases cited in Plaintiffs' Opposition offer helpful comparisons that show why Plaintiffs' claims should be dismissed under Rule 12(b)(1) here.  In *Machlan v. Procter & Gamble*, for example (Opp. at 7), the defendant argued that another entity had *licensed*—not purchased or transferred—the products at issue.  77 F. Supp. 3d 954, 963 (N.D. Cal. 2015).  Importantly, the defendant also admitted that, under the licenses, it still "'ha[d] approval rights over products bearing a licensed mark and any advertising or promotional materials related to those products[.]'"  *Id.* at 964.  Accordingly, the court concluded it was unable to resolve the issue on a 12(b)(1) motion.  *Id.*  Here, Unilever did not merely license ICBINBS to Upfield.  Both Unilever and Upfield agree that ███████████████████████████████████████████████████ ████████████████.[7]

Similarly, in *Vasic v. Patent Health, L.L.C.*, the defendant submitted an affidavit that represented it did not "manufacture, distribute, market or sell" the products at issue.  No. 13cv849 AJB (MDD) 2013 U.S. Dist. LEXIS 125633, at *7 (S.D. Cal. Sept. 3, 2013).  The Court found that the affidavit alone created a dispute of fact and could not resolve plaintiff's claims under Rule 12(b)(1).  *Id.*  Here, Defendants have provided the Contribution Agreement, Certificates of Incorporation, and Certificates of Amendment that show Unilever transferred the ICBINB brand, and Upfield now owns ICBINBS and ████████████████████████.  (Schwartz Decl. Exs. A-E.)  Plaintiffs do not have standing to sue Unilever.

Second, Plaintiffs' claims against Unilever fail Rule 12(b)(6) because Plaintiffs cannot plead a plausible claim for relief in light of Defendants' mutual understanding of ██████

---

[7] Plaintiffs refer to the *Pardini* case against Unilever United States, Inc. to suggest that the relationship between Unilever and Upfield may be "more complicated."  (Opp. at 7 n.6.)  But *Pardini* was filed years before the Contribution Agreement.

██████████████████████████.  (Mem. at 8-9; *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (explaining that a claim is plausible only when the court can draw a "reasonable inference" that the defendant is liable for the misconduct alleged).)  Plaintiffs try to avoid the Contribution Agreement by saying that the Court "may not consider" it under the "doctrine of incorporation" because Plaintiffs have not referred "'extensively to the document' in the complaint."  (Opp. at 8 n.7.)  But that is not the standard:  a court may consider documents whose contents are alleged in a complaint and whose authenticity no party questions.  *E.g., In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).  Plaintiffs do not dispute the authenticity of the Contribution Agreement, and the FAC refers to its contents by alleging that Unilever "exclusively owned and controlled" ICBINB but that "responsibility" is now "shared between" Unilever and Upfield.  (FAC ¶ 10.)

Ignoring the plain terms of the documents and the position of both Unilever and Upfield, Plaintiffs point to three "facts" to suggest that Upfield and Unilever still "share" responsibility for ICBINBS:  (1) Unilever was previously "involved in the marketing and distribution of the product;" (2) Unilever's logo "appeared on packages as recently as January 9, 2019;" and (3) Unilever previously "controlled the brand's website[.]"  (Opp. at 7.)  The realities of transitioning a business do not disprove the clear terms of the Contribution Agreement.  Plaintiffs' claims against Unilever should be dismissed.

Finally, Plaintiffs contend that their failure to distinguish between Unilever and Upfield should be excused because the relevant facts are "in the exclusive control of the corporate defendants."  (Opp. at 9 n.9.)  Not true.  Months before Plaintiffs filed their FAC, Unilever provided the requisite documents and repeatedly explained to Plaintiffs the transfer of the brand and sale to Upfield.  (*See* Mem. at 7; Dec. 17, 2018 Decl. of Elizabeth Balassone ISO Def's MTD and MTS (ECF No. 16-2) ¶¶ 2-7.)  These facts are not in the exclusive control of the Defendants, and Plaintiffs' claims should be dismissed under Rule 12(b)(6).

### III.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the FAC with prejudice and strike Plaintiffs' overbroad class definition.

1    Dated:  April 5, 2019        MORRISON & FOERSTER LLP

2                 By:   */s/ Claudia M. Vetesi*

3                      Claudia M. Vetesi

4                  Attorneys for Defendants
                   UNILEVER UNITED STATES, INC.,
                   UPFIELD US INC. AND UPFIELD

5                    SOURCING US, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28